BYERLY (ALMA); Respondent, vs. THORPE and another, Appellants.
BYERLY (L. L.), Respondent, vs. SAME, Appellants.

*January 7—March 31, 1936.*

*Alfred E. La France* of Racine, for the appellants.

For the respondents there was a brief by *Grotophorst, Quale & Langer* of Baraboo, and oral argument by *Norman M. Quale.*

The following opinion was filed February 4, 1936:

FRITZ, J. The trial court erred in overruling the insurance carrier's plea in abatement.

The defendant, Charles W. Thorpe, was driving the automobile which was involved in the collision that resulted in injuries to the plaintiff, Alma Byerly, with the consent of its owner, B. E. Thorpe. He was a resident of the state of Illinois, and the Hartford Accident & Indemnity Company's policy, upon which plaintiffs seek to recover, was written

and issued in that state upon an automobile kept, licensed, and usually operated therein. That policy had a no-action clause the legal effect of which was substantially the same as that of the no-action clauses in similar policies, under which it has become the established rule (*Morgan v. Hunt*, 196 Wis. 298, 220 N. W. 224; *Milwaukee v. Boynton Cab Co.* 201 Wis. 581, 587, 229 N. W. 28, 231 N. W. 597; *Bergstein v. Popkin*, 202 Wis. 625, 233 N. W. 572) that no action could be brought against an insurer under such policies issued before the enactment, in 1931, of sec. 260.11, Stats. That statute makes such an insurer a proper party defendant in any action brought against an insured under such a policy to recover damages caused by the latter's negligent operation of an automobile. That such no-action clauses in such policies secure a valuable right, was definitely determined in *Pawlowski v. Eskofski*, 209 Wis. 189, 244 N. W. 611. Likewise, it was then determined that, even though sec. 260.11, Stats., related to procedure and was therefore a remedial statute, it would be unconstitutional to construe or apply it so as to substantially lessen the value of a pre-existing contractual provision, and that, therefore, that statute could not be given a retroactive effect so as to apply it to policies written before its enactment. Manifestly, if the procedure authorized by that statute would result in such a substantial impairment of the existing valuable right under a valid no-action clause that it would be unconstitutional to apply that statute retroactively, then it would be likewise unconstitutional to apply it so as to impair that contractual right when it exists under a no-action clause in a policy written in Illinois, where such a clause is valid and effective in all respects. That conclusion is not inconsistent with the decision in *Oertel v. Fidelity & Casualty Co.* 214 Wis. 68, 251 N. W. 465. In that case, the collision occurred in Indiana at a time when the insured was a resident of Pennsylvania, but the policy in question was written and issued to the insured in Wisconsin, after the en-

actment of sec. 260.11, Stats., and while he was a resident of this state. Consequently, the policy provisions were subject to that statute, and, in so far as the no-action clause in that policy was in contravention therewith, no right existed thereunder which became impaired by the procedure authorized by sec. 260.11, Stats. As the policy in suit was not written in Wisconsin, but was written in Illinois, where the no-action clause was not subject to any such statutory provision, the insurer is entitled to the recognition of its rights thereunder, and it would be unconstitutional to permit the. impairment thereof by joining the insurer as a party defendant, until the amount of damages for which the insured is liable has first been determined by final judgment or by an agreement. Consequently, the plea in abatement should have been sustained.

The evidence conclusively establishes the following facts in respect to the collision, which occurred on July 22, 1934, about eight miles east of Janesville, Wisconsin, on a concrete highway which was eighteen feet wide, with the usual black center line, and which was straight and level for a considerable distance to the east and west: Alma Byerly was riding in the rear seat of a westbound automobile operated by her brother, H. L. Dippel. The weather was very hot, and to avoid overheating the motor, Dippel was driving at thirty-eight to forty miles per hour on the right side of the highway, with the left wheels of his car at least a foot to the right of the center line. The defendant, Thorpe, operating a 1933 Pontiac sedan, and accompanied by three guests, was driving from Chicago to Evansville, Wisconsin. He testified, without contradiction, that before leaving Chicago he had made two inspections of the tires on that car; that they were new; and that they appeared to be in good shape. He had the air checked the night of July 21, 1934, at a filling station in Forest Park, Illinois. Thorpe, who was driving in the same direction as Dippel, approached the latter's car from the rear

at a considerably higher rate of speed. Each of the drivers duly observed the other's car. Thorpe likewise drove on the right side of the highway, with the left wheels of the car about a foot north of the center line. He continued in that position, until, just as he was about to turn to the left in order to pass Dippel's car, when his car was twenty-five to thirty feet behind Dippel's car, there was a sudden deflation of the left rear tire of Thorpe's car. That deflation caused the front end of that car to sway violently to the left and go over the center line of the highway. That was the first thing Thorpe noticed. When it commenced he had both hands on the steering wheel. He immediately applied his four-wheel mechanical brakes full force, which caused the car to slow down, but increased the swaying. Then to straighten out his car so as to prevent it from going off the highway, he turned the steering wheel to the right, and, at that time, as the car turned to the right, and while he had his brakes on at full force, the left end of the front bumper of his car struck the left side of the rear bumper of Dippel's car.

Dippel, without hearing any prior warning or signal of any kind, heard a sudden screech of brakes to his rear and instantly a terrific impact, as the left side of the rear bumper of his car was struck. The impact pushed his car forward at a high rate of speed, and caused it to swerve off to the right, and then veer to the left, and follow a rather steep bank. He finally righted the car, but, while he was trying to control it and while it was following the bank on the left side of the highway, the plaintiff was severely injured. After the impact, Thorpe's car skidded and swayed for eighteen feet, and then rolled over twice and came to a stop with the rear end thereof against a tree two hundred twenty-four feet beyond the point of impact.

Undisputed testimony by witnesses, who qualified as experts on the subject, established that the deflated tire, which was a United States Royal with a very good tread, appeared

to have been driven between five thousand and six thousand miles; that the deflation was due to a puncture by a cotter key, two inches in length, which was found after the accident almost entirely embedded in the driving surface of the tire, between the rows of elevations on the tread; that that key was sticking almost straight into the tire, which had a tear, about three quarters of an inch in length, completely through the casing where the key was embedded; and that when metal comparable in size to that key is driven into a tire, it will go flat immediately, in about the same length of time as it would from a blowout.

The jury found that the collision was caused by Thorpe's negligence in respect to, (1) the speed at which he drove; (2) the manner in which he drove, managed, and guided the Pontiac automobile; and (3) the distance at which he followed Dippel's car just before the collision.

Defendants contend that there is no credible evidence to sustain those findings; but that, on the contrary, the evidence necessitates the conclusion that the sudden and unforeseen deflation of the tire, without any negligence on Thorpe's part, was an intervening and efficient cause of the accident, which was unavoidable; and that, therefore, Thorpe is not liable for the consequences thereof.

Those contentions must be sustained. There is no finding, and the evidence would not admit of any finding, that there was any negligence on Thorpe's part in respect to the tire or the sudden and unexpected puncturing and deflation thereof. That was clearly an unavoidable accident which was not the result of any negligence on Thorpe's part. Even if he was negligent prior to, or up to the time of, the deflation of the tire, in driving at an excessive speed, or in following at that speed as closely as twenty-five or thirty feet behind Dippel's car, or in not turning to the left sooner in order to pass that car, the real and efficient cause of the collision was, obviously, that accidental and unavoidable de-

flation of the tire which intervened and was due to matters or conditions which were not under Thorpe's control or the consequence of any negligence on his part. Under those circumstances, Thorpe is not liable for the damages caused by that intervening and unavoidable accident. As was said in *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271:

"Whenever a new cause [independent intervening circumstance] intervenes which is not a consequence of the first wrongful cause, which is not under the control of the wrongdoer, which could not have been foreseen by the exercise of reasonable diligence by the wrongdoer, and except for which the final injurious consequences would not have happened, then such injurious consequences must be deemed too remote to constitute the basis of a cause of action."

See also *Wilczynski v. Milwaukee E. R. & L. Co.* 171 Wis. 508, 177 N. W. 876; *Seaver v. Union,* 113 Wis. 322, 89 N. W. 163; *McFarlane v. Sullivan,* 99 Wis. 361, 74 N. W. 559, 75 N. W. 71; *Ruscžck v. Chicago & N. W. R. Co.* 191 Wis. 130, 210 N. W. 361; Wharton, Negligence (2d ed.), p. 110, § 134.

On the other hand, the evidence does not admit of finding that the impact was caused by any negligence on the part of Thorpe during the momentary interval between the deflation and the impact. As that deflation and the resulting precipitation of his car to the left were not attributable to negligence on his part, his attempts to avoid the imminent danger which suddenly confronted him, cannot be held negligent merely because it may seem, subsequently, upon more deliberate consideration, that he failed, in that emergency, to do that which would have been best. *Williams v. Duluth St. R. Co.* 169 Wis. 261, 171 N. W. 939; *Sharkey v. Shurman,* 170 Wis. 350, 174 N. W. 912; *Johnson v. Prideaux,* 176 Wis. 375, 187 N. W. 207; *Seligman v. Hammond,* 205 Wis. 199, 236

N. W. 115.   It follows that the judgments must be reversed, and that the complaints must be dismissed.

*By the Court.*—Judgments reversed, and causes remanded with directions to enter judgment in each action dismissing the complaint.

A motion for a rehearing was denied, with $25 costs in one case, on March 31, 1936.