FOELLMI and another, Appellants, v. SMITH and another, Respondents.*

*November 29—December 29, 1961.*

\* Motion for rehearing denied, without costs, on March 6, 1962.

For the appellants there was a brief and oral argument by *James C. McKenzie* of La Crosse.

For the respondents there was a brief by *Hale, Skemp, Hanson, Schnurrer & Skemp* of La Crosse, and oral argument by *William P. Skemp*.

CURRIE, J. These three issues are raised on this appeal:

(1) On the record before us is it established as a matter of law that there was no causal negligence on the part of Smith?

(2) Is Milwaukee Auto estopped by the conduct of its adjuster from raising the defense of plaintiffs' failure to comply with the two-year notice-of-injury requirement of sec. 330.19 (5), Stats. 1953?

(3) What effect does Milwaukee Auto's default under sec. 327.22, Stats., have on the maximum amount for which judgment may be entered against it in this action?

*Negligence Issue.*

Defendants assert on this appeal that, irrespective of the issue with respect to the failure to give the two-year notice of injury, plaintiffs cannot prevail because there was no causal negligence on the part of Smith. Because of the finding, that the left rear tire went flat immediately prior to the accident without fault on the part of Smith, thereby creating an emergency, it is contended that anything which Smith thereafter did or failed to do in the way of management and control could not constitute causal negligence. Implicit in this contention is the jury's finding that Smith had no prior knowledge of the tire defect. In support of this argument defendants cite, among other cases: *Kowalke v. Farmers Mut. Automobile Ins. Co.* (1958), 3 Wis. (2d) 389, 397, 88 N. W. (2d) 747; *Jensen v. Jensen* (1938), 228 Wis. 77, 279 N. W. 628; *Byerly v. Thorpe* (1936), 221 Wis. 28, 33, 265 N. W. 76; *Cleary v. Eckart* (1926), 191 Wis. 114, 119, 210 N. W. 267, 51 A. L. R. 576.

We deem that these cases are distinguishable on their facts from the instant case. However, although the facts in *Byerly v. Thorpe, supra,* are entirely different, the rationale of that opinion supports defendants' contention. In that case there was a sudden unavoidable deflation of a tire on defendant Thorpe's automobile, and it collided with the car it had been following. The jury found Thorpe causally negligent with respect to speed, management and control, and the distance at which he followed the other car. This court stated (p. 33):

"Even if he was negligent prior to, or up to the time of, the deflation of the tire, in driving at an excessive speed, or in following at that speed as closely as 25 or 30 feet behind Dippel's car, or in not turning to the left sooner in order to pass that car, the real and efficient cause of the collision was, obviously, that accidental and unavoidable deflation of the tire which intervened and was due to matters or conditions which were not under Thorpe's control or the consequence of any negligence on his part. Under those circumstances, Thorpe is not liable for the damages caused by that intervening and unavoidable accident."

However, it seems apparent that Thorpe's negligence with respect to speed and following too closely was actively continuing at the time of the blowout. Therefore, such negligence was concurrent in time with the blowout. Thorpe's negligent acts and the sudden unavoidable deflation of the tire constituted concurring proximate causes of the accident, and Thorpe should not have been relieved from liability merely because one of such concurring causes was beyond his control. *Cook v. Minneapolis, St. P. & S. S. M. R. Co.* (1898), 98 Wis. 624, 639, 74 N. W. 561; *Gould v. Schermer* (1897), 101 Iowa 582, 70 N. W. 697; *Maland v. Tesdall* (1942), 232 Iowa 959, 5 N. W. (2d) 327. For this reason, we expressly overrule the holding in *Byerly*

*v. Thorpe, supra,* that the tire blowout was an intervening cause which relieved Thorpe from liability.

An intervening force is one which actively operates in producing harm to another *after* the actor's negligent act or omission has been committed. Restatement, 2 Torts, p. 1185, sec. 441 (1); Prosser, Law of Torts (2d ed.), p. 266, sec. 49. If the actor is actively participating in a negligent act at the time an outside force comes into play, and both the negligence of the actor and the outside force are substantial factors in causing an accident-producing injury to another, then such outside force is not an intervening cause within the foregoing definition. Because, as hereinafter pointed out, the jury could find from the evidence that Smith was in the act of attempting to make a sudden turn on loose gravel at the time the tire deflated, the jury's verdict with respect to the issue of negligence can be sustained on the theory of concurring causes.

It is elementary that there may be more than one proximate cause of an automobile accident. *Chevinskas v. Wilcox* (1933), 212 Wis. 554, 556, 250 N. W. 381. Therefore, the jury's finding of Smith's causal negligence as to management and control would be sufficient to support a judgment in favor of plaintiffs, assuming the defense raised by the plea in bar should fail. Inasmuch as both plaintiffs and defendants moved for judgment on the verdict, there properly is no question before us on the issue of negligence. This is because in the court below defendants did not attack the jury's answers to the questions relating to Smith's causal negligence. This bars them from doing so here as a matter of right. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380.

However, we exercise our discretionary power to decide the negligence issue on the merits. The car driven by Smith at the time of the accident was a fifteen-year-old

Chevrolet. He was accompanied by three other boys as guest passengers, one of whom was plaintiff Ronald Foellmi. Smith was then nineteen years of age, Ronald was eighteen, one of the other boys was sixteen, and the age of the fourth boy does not appear. The accident happened on French island in the city of La Crosse about 8 o'clock in the evening. The boys had stopped to eat at a restaurant a few blocks south of the point of the accident. Then they embarked in Smith's car to take a ride about the island before going to their homes. The car proceeded northerly on Bainbridge street. Where the accident occurred, Catgut road runs into Bainbridge street from the northeast but does not intersect the latter street. The intersection at such junction roughly forms a Y, except that Bainbridge street runs in a straight direction. The car left the highway and ended up on its left side in a ditch located in the triangle of land lying between the two streets at their juncture. Ronald Foellmi suffered a crushed vertebra as a result of the accident.

In view of the fact that it is the defendants who seek to upset the verdict with respect to the finding of causal negligence on the part of Smith, we must consider the evidence from the standpoint most favorable to plaintiffs. *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 184, 83 N. W. (2d) 759. Therefore, we shall confine our statement of the pertinent evidence bearing on the negligence issue largely to the testimony which supports the jury's findings.

There was loose gravel in the roadway at the point where the two streets joined. Shortly after the accident occurred, traffic officers investigated the accident. A written police report was prepared on the scene by one of the officers and it was signed by defendant Smith. This report contains the following statement by Smith: "I went to go straight and decided to turn and I think I blew a back tire and landed on my side." In his testimony at the trial, Smith was asked

by his counsel to trace the course of his automobile on a diagram of the intersection "as it went down into the ditch." Smith made this response: "It traveled down Bainbridge street here (indicating) and hit this loose gravel." Ronald testified that the first thing he observed in the happening of the accident was a sharp turning of the car. From the foregoing, the jury could draw the reasonable inference that Smith had intended to proceed straight ahead on Bainbridge street and then suddenly changed his mind and attempted to make a sharp turn to the right into Catgut road at a point where the road surface was loose gravel. The jury could also reasonably infer that this combination of circumstances would have resulted in the accident irrespective of any deflation of a tire. Such inferences would support the finding that Smith was causally negligent with respect to management and control.

Furthermore, Smith testified that his maximum speed was only 25 miles per hour and that he had his car in second gear up to a point from 90 to 100 feet from the site of the accident. Because of the low speed at which the car was traveling, the jury might well have concluded that a deflated tire would be insufficient alone to have caused the car to go out of control and proceed into the ditch and tip over. This being the case, the deflation of the tire would not relieve Smith from liability. *Kowalke v. Farmers Mut. Automobile Ins. Co., supra.*

We have grave doubts as to whether the trial court should have answered "Yes" as a matter of law the question in the verdict which inquired, "Immediately prior to the accident, did the left rear tire of the Chevrolet automobile, driven by Clayton Smith go flat?" Ronald Foellmi, Smith, and one of the other passengers heard no report of a tire blowing out. The other passenger was in Arizona at the time of trial and did not testify. Because the car here involved was a 1938 model, it was equipped with tube-type tires. It is common

knowledge that when such tires blow out a loud report results. There was further testimony that a hard jar was felt when the car went into the ditch which gives rise to an inference that the left rear tire may then have struck something causing it to deflate. It is undisputed that this tire was deflated after the accident.

Smith testified that after giving his report to the traffic officer he made an examination of the scene of the accident including "where the tire had blown as shown by the gravel." Defendants stress the fact that this piece of testimony was not controverted by any other witness. However, the jury has the right to disbelieve the uncontradicted testimony of a witness if it is against reasonable probabilities. *Pagel v. Holewinski* (1960), 11 Wis. (2d) 634, 641, 106 N. W. (2d) 425. It seems highly improbable that a person seeing displaced gravel at the spot in question could tell whether it came from a tire blowout or from a sudden swerving of the car.

Therefore, we conclude that there is ample credible evidence to sustain the jury's finding of causal negligence on Smith's part with respect to management and control. We interpret the verdict to mean that such causal negligence and the deflation of the tire were concurrent proximate causes of the accident. Thus, if the issue of equitable estoppel is resolved in favor of plaintiffs, they would be entitled to judgment on the verdict.

### Equitable Estoppel.

Shortly after the accident, Hain, an adjuster for Milwaukee Auto who resided at Menomonie, contacted the plaintiffs. Thereafter, he made eight or 10 visits to the Foellmi home in La Crosse to see how Ronald's condition was progressing. In 1955 he recommended that Ronald see Dr. Paul, an osteopath practicing at Eau Claire, and secure a series of treatments from him. Ronald acted on this advice

and had eight osteopathic treatments by Dr. Paul. Hain called at the Foellmi home in response to a letter Ronald's father wrote to him in October, 1955, requesting him to do so. Arnold Foellmi placed the time of such call as being in the last week of October, 1955, while Hain testified it was made sometime between October 15 and October 20, 1955.

Hain was informed at that time that the Foellmis were ready to make a settlement. He first offered $750 in settlement and then raised the figure to $1,000. Arnold Foellmi became angry at this low offer. As to what then transpired there is some conflict between the testimony of the two Foellmis and that given by Hain. Because the jury resolved this conflict in accord with the version testified to by the Foellmis, our further statement of the facts of such conference is based upon their testimony.

Upon becoming angry, Arnold Foellmi told Hain that his offer was very unreasonable and that "if they [Milwaukee Auto] wouldn't give me a better deal than that, I would have to see an attorney." Hain then asked the Foellmis what they thought they should receive in settlement. Ronald brought out his records showing the amount of wage payments received by him while employed by the Trane Company prior to the accident, and the Foellmis computed Ronald's wage loss due to the accident to have been $5,200. Arnold Foellmi stated that in addition to such wage loss Ronald should have $1,000 for pain and suffering, thus making the requested total settlement $6,200. Hain then said that such an amount was too big for him to settle and he would take the $6,200 offer back to the Milwaukee Auto home office. He also stated that Milwaukee Auto was a big company and he was sure it would pay "any satisfactory claim," and that he "would be back in a week or ten days."

Hain never returned, and early in January Arnold Foellmi wrote directly to Milwaukee Auto about the matter. Milwaukee Auto then denied liability on the ground of failure to

give the two-year notice of injury. It was not until Milwaukee Auto took this position that the Foellmis consulted an attorney. However, the company under the medical-payments clause of its policy did pay all of Ronald's medical expenses except his travel expense incurred in making the trips to Eau Claire in connection with the treatments given by Dr. Paul.

Notwithstanding that sec. 330.19 (5), Stats. 1953, in unqualified terms required the serving of a notice of injury within two years of the date of the accident as a condition to the maintenance of the instant action, Milwaukee Auto may be estopped from taking advantage of plaintiffs' failure to comply with such statute by the conduct of its agent Hain. *Will v. Jessen* (1956), 273 Wis. 495, 498, 78 N. W. (2d) 905; *Olson v. Stella Cheese Co.* (1948), 254 Wis. 62, 64, 35 N. W. (2d) 220; *Guile v. La Crosse Gas & Electric Co.* (1911), 145 Wis. 157, 171, 130 N. W. 234. In *Will v. Jessen, supra*, according to an affidavit filed in opposition to a motion for summary judgment, an insurance adjuster had assured the father of a minor injured in an automobile accident, during negotiations for settlement, that it would not be necessary to obtain legal counsel. This was held sufficient to present an issue of estoppel which would require trial, and thus the case could not be disposed of on a motion for summary judgment. In that case, it was necessary for this court to infer that the father relied on the adjuster's statement, that it was not necessary to seek legal counsel, in failing to give the two-year notice of injury. In the instant case, however, the jury has made a specific finding that plaintiffs believed and relied on the statements made by Hain, including the one that there was no reason to contact an attorney. The only act of reliance by plaintiffs was their failure to serve the two-year notice of injury. Thus, this finding establishes that notice was not served by plaintiffs because of their reliance on Hain's statements.

Defendants place great reliance on *Brown v. Farmers Mut. Automobile Ins. Co.* (1960), 11 Wis. (2d) 269, 105 N. W. (2d) 319. There, plaintiff sought to invoke the rule of estoppel against defendant insurance company to excuse his failure to serve the two-year notice of injury. The conduct of the insurance company claimed to give rise to an estoppel was the carrying on of .settlement negotiations with the plaintiff. Four months before the date on which the two-year notice period expired, the adjuster had made it clear to the plaintiff that the company would only pay part of the damages demanded. The adjuster made no statement that plaintiff should not see an attorney. On these facts, this court held that plaintiff had failed to prove an estoppel.

The instant case is distinguishable on its facts from the *Brown Case*. Here, in the last conference between plaintiffs and Hain, there was no definite statement by Hain that Milwaukee Auto would not pay the damages demanded. Of even greater materiality is the fact that Hain, unlike the adjuster in the *Brown Case,* definitely told plaintiffs that it was not necessary to see an attorney. Furthermore, only about two months elapsed between the conference with Hain and the running of the two-year notice period, while four months elapsed in the *Brown Case* between the last conference with the adjuster and the ending of the two-year period. We deem these differences are sufficient to make the issue of estoppel in the instant case one of fact for the jury to pass on.

Defendants strenuously urge that the plaintiffs' failure to take any action to see an attorney or to serve the two-year notice during the two-month period which elapsed between the October, 1955, conference with Hain and December 27, 1955, constitutes such a lack of diligence on plaintiffs' part as to rule out estoppel. A lack of diligence on the part of the party claiming estoppel is fatal. *Thorp Finance Corp.*

*v. LeMire* (1953), 264 Wis. 220, 228, 58 N. W. (2d) 641, 44 A. L. R. (2d) 189; 19 Am. Jur., Estoppel, p. 741, sec. 86. This principle was well stated in *Bradley v. Andrus* (3d Cir. 1901), 107 Fed. 196, 199:

"It is an elementary principle of the law of estoppel that he who claims the benefit of an equitable estoppel or estoppel *in pais* on the ground that he has been misled through the acts, conduct, or representations of another, must not have been misled through his own want of reasonable care and circumspection."

We are not prepared to hold as a matter of law that the lapse of approximately two months following Hain's representations, upon which plaintiffs relied and during which they did nothing to protect their rights, constituted a lack of due diligence on their part. However, it does present a jury issue and the special verdict should have included a question covering this issue. On this point it should be noted that in many situations where issues of estoppel are submitted to a jury, it may not be necessary to submit the issue of due diligence because of the absence of any evidence which would substantiate a finding of the lack of diligence on the part of the party claiming estoppel.

Because of the long torturous history of this litigation, we regret that it becomes necessary to remand for a new trial. However, such new trial is to be limited to the sole issue of whether plaintiffs acted with reasonable diligence in failing to consult an attorney or to serve the two-year notice of injury during the period following the October conference with Hain, and December 27, 1955.

The verdict inquired whether Hain had made the representation that he "would return in a week or ten days if the company would pay $6,200 to settle." The Foellmis' testimony did not say that Hain's statement, that he would return in a week or ten days, was qualified by any such

condition. Therefore, this question of the verdict should simply have inquired as to whether Hain had represented that he would return in a week or ten days. While such error is not material to this appeal it should be avoided in the new trial.

There is no evidence which in any way connects defendant Smith with the representations Hain made to the plaintiffs. Therefore, there can be no estoppel invoked against Smith and the judgment dismissing the complaint as to him must be affirmed.

*Effect of Default Under Sec. 327.22, Stats.*

On Saturday, April 26, 1957, counsel for plaintiffs, pursuant to sec. 327.22, Stats.,[1] served on defendants' counsel a notice to admit or refuse to admit that the policy limits of Milwaukee Auto's policy issued to Smith, and in effect on the day of the accident, were "$10,000 per person, and $20,000 per accident." One week thereafter, May 3, 1957,

[1] Sec. 327.22 provides in part as follows:

"(1) Any party to any action may, by notice in writing served upon a party or his attorney at any time after an issue of fact is joined and not later than ten days before the trial, call upon such other party to admit or refuse to admit in writing:

"(a) The existence, due execution, correctness, validity, signing, sending, or receiving of any document, or,

"(b) The existence of any specific fact or facts material in the action and stated in the notice. . . .

"(3) If the party receiving such notice fails to comply therewith within five days after such service the facts therein stated shall be taken to be admitted.

"(4) In case of refusal to make such admission, the reasonable expense of proving any fact or document mentioned in the notice and not so admitted shall be determined by the court at the trial and taxed as costs in any event against the party so notified, unless the court is satisfied the refusal was reasonable.

"(5) The court may allow the party making any such admission to withdraw or amend it upon such terms as may be just, and may, for good cause shown, relieve a party from the consequences of a default."

defendants' counsel served a written refusal to admit such coverage limits and attached thereto an affidavit of an employee of Milwaukee Auto stating that the policy limits for bodily injury were $5,000 for each person and $10,000 for each accident.

During the course of the trial, Hain testified with respect to coverage: "We [Milwaukee Auto] had medical pay up to $500; we had liability and property damage of 5/10 and 5." Later he was asked to explain such answer and he then further testified, "5/10 and 5 means that there is a limit of $5,000 for any one individual; $10,000 for any one accident, which may involve two or more people; and $5,000 limit on the policy for any property damage incurred." While plaintiffs' counsel objected to this line of questioning, he did not ground the objection on any claim that Milwaukee Auto was precluded from showing the true policy limits by reason of being in default under sec. 327.22, Stats.

Plaintiffs now contend that because defendants' refusal to admit was two days late under sec. 327.22, Stats., Milwaukee Auto is thereby precluded from asserting that any possible liability is restricted to its $5,000 policy limit. On this appeal plaintiffs not only are contending for judgment for the $5,500 damages found by the jury, but, in addition, the amount of Ronald's medical expenses previously paid by Milwaukee Auto under the medical-payments coverage of the policy plus certain travel expenses in making trips to Eau Claire for the purpose of medical treatment. Plaintiffs' claim for double payment of medical expenses is based on *Severson v. Milwaukee Automobile Ins. Co.* (1953), 265 Wis. 488, 61 N. W. (2d) 872.

It is our determination that plaintiffs waived any right to rely on Milwaukee Auto's default under sec. 327.22, Stats., by not stating such default as an objection to the questions put to Hain regarding the coverage limits of the

policy. If such an objection had been made, counsel for Milwaukee Auto might then have presented evidence to the court establishing good cause for the two days' delay in serving the refusal to admit. Sub. (5) of sec. 327.22 expressly authorizes the trial court to relieve a party from the consequences of default upon a showing of good cause.

Therefore, if any judgment is hereafter entered against Milwaukee Auto in this action, it must be limited to $5,000 plus costs and disbursements. This is because the evidence is uncontroverted that its policy coverage limit for bodily injury to one person is $5,000.

### Taxation of Costs.

Both defendants have been represented by the same counsel on this appeal. We assume from this that Milwaukee Auto was obligated under its policy to defend Smith in the action, and that Smith did not elect to engage separate counsel to represent him. No part of defendants' brief has been devoted to advance any argument that the judgment should be affirmed as to Smith even though the court might determine that it should be reversed as to Milwaukee Auto. For these reasons, Smith shall not be entitled to tax costs against plaintiffs on this appeal.

*By the Court.*—That part of the judgment which dismissed plaintiffs' complaint against defendant Smith is affirmed, no costs to be taxed by Smith; that part of the judgment which dismissed plaintiffs' complaint against defendant Milwaukee Automobile Insurance Company is reversed, and the cause is remanded for a new trial on the issue of the exercise of due diligence by plaintiffs in conformity with this opinion. Plaintiffs' application, to include in their taxation of costs against defendant Milwaukee Automobile Insurance Company the allowable expense of printing their entire brief although it exceeds 50 pages in length, is granted.