DONALD L. DECLERCQ, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
De Clercq v. Commissioner
Docket No. 8267-73.
United States Tax Court
T.C. Memo 1982-386; 1982 Tax Ct. Memo LEXIS 360; 44 T.C.M. (CCH) 409; T.C.M. (RIA) 82386; July 12, 1982. James H. Hudnut, for the petitioner. F. Michael Kovach, Jr., for the respondent. SCOTT MEMORANDUM FINDINGS OF FACT AND OPINION SCOTT, Judge: Respondent determined deficiencies in petitioner's income tax for the calendar years 1969, 1970, and 1971 in the amounts of $8,027.11, $9,545.01, and $4,160.53, respectively, plus additions to tax under section 6653(b), [1] in the amounts of $4,013.56, $4,772.51, and $2,080.27, respectively. In his answer respondent raised as an alternative claim an addition to tax under section 6651(a) for the calendar year 1970 for failure to timely file a return for that year, and an addition to tax under section 6653(a) for each of the taxable years here in issue for negligence. *361 The issues for decision are (1) whether respondent has shown by clear and convincing evidence that there is an underpayment of tax in each of the taxable years here in issue, a part of which is due to fraud; and (2) if we determine that respondent has failed to show that there is an underpayment of tax in each of the years here in issue, a part of which is due to fraud, has he shown that petitioner is liable for the additions to tax under section 6651(a) and 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Donald L. DeClercq (petitioner) is an unmarried individual who at the time of the filing of the petition in this case had his legal residence at the State Prison of Southern Michigan, Jackson, Michigan. Petitioner timely filed individual Federal income tax returns for each of the calendar years 1969 and 1971. For the calendar year 1970, an unsigned individual Form 1040 was received from petitioner by the Cincinnati Service Center on October 19, 1972, with full remittance of the tax shown to be due thereon. [2]
*362 Respondent in his notice of deficiency to petitioner dated August 20, 1973, determined the deficiencies and additions to tax as set forth above based on a net worth computation plus expenditures. Petitioner in his petition filed in this case pro se alleged that his taxable income for each of the years in issue was not in the amount as computed by respondent in the notice of deficiency. He also alleged error in respondent's determination of an addition to tax for fraud under section 6653(b), although this allegation of error was made in the part of the petition in which petitioner requested "relief." Petitioner alleged as facts sustaining his assignments of error with respect to the deficiencies determined by respondent that the income as reported in each year was correct. He then referred to "Specific Exemption, because that said deficiency was a gift from Donor, Arthur DeClercq, the said Petitioner's father, who is deceased." Respondent in his answer denied both petitioner's allegations of error and his statements of fact. On September 16, 1977, the attorney who now represents petitioner entered an appearance on behalf of petitioner in this case. On February 27, 1978, respondent *363 served upon petitioner's counsel a lengthy set of interrogatories to petitioner. On May 9, 1978, respondent filed with this Court a motion to compel responses to respondent's interrogatories. This motion was served on petitioner's counsel on May 22, 1978, and calendared for hearing on May 31, 1978. When the motion was called for hearing on May 31, 1978, the Court stated that an order would be entered directing petitioner to respond to the interrogatories within 10 days, and that if no response was received within 10 days, the Court would entertain a motion from respondent that the amounts of the deficiencies for the years before the Court as set forth in the notice of deficiency be taken as having been established as correct for the purposes of this case. On June 15, 1978, petitioner's attorney filed a motion to be permitted to withdraw from the case and this motion was set for hearing in Detroit, Michigan, on June 26, 1978. When this motion was called for hearing, the attorney represented to the Court that petitioner was in the county jail, that for the last 60 days he had been variously in the custody of either the United States Marshal or the State of Michigan, that the attorney *364 had been unable to discuss with him either the interrogatories propounded or requests for admission previously served on the attorney by respondent, and that he expected petitioner would be in the State Prison of Southern Michigan in the near future.The Court, after hearing the argument of counsel, granted his motion to withdraw and made absolute the previous order that if petitioner failed to file responses within 10 days to respondent's interrogatories, the case, insofar as it related to deficiencies, would be dismissed with prejudice against petitioner and remain calendarded for trial solely on the sections 6653(b), 6653(a), and 6651(a) issues. Thereafter, on May 3, 1979, an order was entered that this case is dismissed as to the issues pertaining to the underlying deficiencies upon which petitioner had the burden of proof and decision will in due course be entered accordingly. The case remained before the Court with respect to the sections 6653(b), 6653(a), and 6651(a) issues upon which respondent has the burden of proof. This case was again calendared for trial at Detroit, Michigan, on March 2, 1981, and, when it was called for trial, petitioner moved for a continuance. In *365 continuing the case, the previous order dismissing the case as to the deficiencies was reaffirmed, and it was reaffirmed that the case remained before the Court with respect to the sections 6653(b), 6653(a), and 6651(a) issues. The day this case was called for trial on the date to which it had been continued, petitioner's counsel who had withdrawn from the case in 1978 again entered his appearance. Prior thereto, petitioner pro se had signed a stipulation of facts at the request of respondent's counsel. Paragraph 4 of that stipulation states: 4. The only issues contested by petitioner are as follows: (1) whether or not petitioner possessed a cash hoard on December 31, 1968, sufficient to negate the respondent's computation of petitioner's taxable income during 1969, 1970 and 1971; (2) whether or not petitioner received non-taxable cash gifts during the years 1969, 1970 and 1971 which were equal to or in excess of the amounts respondent determined petitioner received as taxable income; and (3) whether or not any part of the underpayment of tax for each of the years 1969, 1970 or 1971 was due to fraud. During the years 1969, 1970, and 1971, petitioner derived taxable income *366 from operation of a construction and home modernization business, from sale of watches, from gain from the sale of stock, and from dividends paid on stock he owned. Petitioner's tax returns for each of the years here in issue were prepared by a certified public accountant. The returns for each year reported some income on Schedule C and the returns for 1969 and 1970 reported net losses of $394.45 and $24,236.73 from sales of stock for total sales prices of $13,364 and $73,042, respectively. [3] This accountant had been preparing petitioner's tax returns since 1960. Petitioner had filed Federal income tax returns for a number of years prior to 1969. Petitioner would deliver a list of his claimed income from the operation of his construction business to the accountant. The list would neatly and orderly itemize each job and the net profits reported from that job by petitioner. Petitioner would also deliver to the accountant a list of the deductions summarizing in a neat and orderly fashion the various checks and receipts which would be attached to the summary. Miscellaneous expenses for telephone calls and parking fees would be estimated and not substantiated by canceled check or *367 receipt. Generally, petitioner's returns would be prepared sometime after the close of the taxable year but before April 15 of the following year. The CPA could not recall why a 1970 return was untimely prepared and could not recall whether he had reminded petitioner before April 15, 1971, that a 1970 return should be filed. He certainly would have reminded petitioner of this had he seen him, since that was his custom with respect to his clients. The accountant accurately prepared petitioner's returns from the information submitted to him and did not deliberately or intentionally understate petitioner's income or overstate his deductions or otherwise knowingly and deliberately prepare inaccurate, incorrect, or false returns for petitioner for the years 1969, 1970, and 1971. This accountant was struck by the discrepancy between petitioner's standard of living and the amount of income reported on his return. In 1970, while preparing petitioner's 1969 return, the accountant asked petitioner about this discrepancy and petitioner referred to gifts he had received during the year. The accountant made no further inquiry. *368 Prior to the years here in issue petitioner had graduated from the Detroit Institute of Technology. He took an accounting course while at that school. He also enrolled in law school during two separate semesters, but dropped out before the end of the semesters. During each of the years from 1960 through 1971, petitioner purchased a new Cadillac or Lincoln Continental. In 1965, petitioner reported gross income of $4,002.41; for 1967, he reported adjusted gross income of $2,316; and for 1968, he reported adjusted gross income of $2,443.31. In 1972, petitioner was convicted of breaking and entering an occupied dwelling in Bloomfield Hills, Michigan, on or about March 26, 1970, with the intent to commit larceny. Certain rare books which were taken from the house in Bloomfield Hills were sold to the Argosy Bookstore in New York City for $1,200 by a man representing himself to be D. Dixon. A driver's license made out to Donald Leo Dixon was found in petitioner's possession. In 1971, petitioner first put up the money to post a $1,000 bond and later, when this bond was increased to $10,000, put up an additional $9,000 for the bond. In 1971, petitioner had on his person a cashier's *369 check for either $8,500 or $10,000. He was given a drug by an individual who then had him sign the check, which the individual took. In August 1971, a check drawn to a James McPhee in the amount of $10,000 by petitioner was cashed.This check represented a loan to Mr. McPhee from either petitioner or his mother. Under date of August 4, 1972, a promissory note reciting that the undersigned, Atlas Premium Budget Company, promises to pay to the order of Donald DeClercq 3 years from date $20,000 for value received was signed "Donald DeClercq by James E. McPhee, President." An Internal Revenue agent began an investigation of petitioner's tax returns sometime in 1972. In August 1972 the agent met with petitioner. At the agent's request, petitioner brought his business records and his personal records to a prearranged conference. He left his business records with the agent and some of his personal records. He did not leave certain personal canceled checks and the agent got copies of the personal canceled checks of petitioner from the F.B.I. At the initial meeting, the agent asked petitioner a number of questions. He asked petitioner about large gifts he might have received and petitioner *370 told him that his father had given him large sums of money during the years here in issue. He also asked petitioner about the amount of cash he might have had at any one time and petitioner told him that from time to time he would have $20,000 in cash on hand for a week or so when he was planning some stock transaction. The agent also summoned certain records of petitioner's from banks and stockbrokers. In early 1973, the Revenue agent put together some figures for a net worth statement and went to the State Prison of Southern Michigan to show these figures to petitioner and to see if he could explain where the money shown by the figures came from or if he had made some errors or if there was something else that should be considered. At that time, petitioner told the Revenue agent about some cash that he had in a furnace in a basement. The Revenue agent did not look for accumulations of cash or cash hoards that petitioner may have had prior to December 31, 1968, but he did look for bank accounts and stock holdings petitioner had prior to that date. Sometime in 1971, petitioner's father died. Prior to the time of his death, petitioner's mother and his cousin saw petitioner's *371 father give petitioner some cash. OPINION The sole issue with respect to the addition to tax under section 6653(b) is whether respondent has shown by clear and convincing evidence that there is an underpayment of tax by petitioner in each of the years here in issue, a part of which is due to fraud. Respondent argues that the order entered "that this case is dismissed as to the issues pertaining to the underlying deficiencies upon which petitioner has the burden of proof and decision will in due course be entered accordingly" is sufficient to establish that the income as determined by respondent in the notice of deficiency on the net worth basis is correct for the purposes of the proof respondent must offer to establish fraud. Respondent states that since Rule 104(c)(1), Tax Court Rules of Practice and Procedure, provides that this Court may order that where a party fails to obey an order of the Court, the matters at issue shall "be established for the purposes of the case in accordance with the claim of the party obtaining the order," the order dismissing the case as to the deficiencies should be considered an order establishing as a fact for all purposes of the case including *372 the fraud issue that petitioner received the income shown in the net worth statement in the notice of deficiency. Respondent further argues that paragraph 4 of the stipulation is in effect a stipulation that the amounts determined in the notice of deficiency as petitioner's income for the years here in issue are established for the purposes of proving fraud unless petitioner can show error in the computation. Respondent also argues that the petition in effect admits that the income determined in the notice of deficiency is correct except for gifts from petitioner's father to petitioner. In our view, none of these contentions of respondent are correct. In order to show fraud, it is necessary that respondent show that there is an underpayment of tax, a part of which is due to fraud, and this fact must be shown by clear and convincing evidence. The fact that the deficiencies were determined against petitioner because of his failure to respond to interrogatories or the fact that after denying that he had income as stated by respondent and denying that there were any deficiencies, any part of which were due to fraud, petitioner specifically made statements about gifts and in the stipulation *373 specifically made statements about gifts and cash on hadn does not relieve respondent of the burden of establishing that there is an underpayment of tax in each year some part of which is due to fraud. Certainly the order dismissing the case with prejudice will result in the deficiencies being determined against petitioner.However, this determination does not establish fraud on the part of petitioner. In our view, respondent has totally failed to show that petitioner had any income in the years here in issue in excess of that reported on his returns and that if he did have any such income any part of the underpayment resulting therefrom was due to fraud. Respondent's entire argument is that petitioner has failed to show error in his determination and that the entry of the order determining the deficiencies against petitioner as a sanction for failure to respond to interrogatories is clear and convincing evidence that petitioner had unreported income in each year as determined by respondent. However, it has long been settled "that respondent cannot meet his own burden of establishing fraud on the basis of petitioners' failure to discharge the burden of proving error in the determination *374 of deficiencies * * *." Otsuki v. Commissioner,53 T.C. 96, 106 (1969).This same principle was expressed in Nicholson v. Commissioner,32 B.T.A. 977 (1935), affirmed on other issues, 90 F.2d 978, 979 (9th Cir. 1937). In that case we quoted from a prior case in which it was pointed out that fraud has always been regarded as a serious metter which is never presumed and that fraud must be proved by clear and convincing evidence. We then stated (at 989): Here fraud is not admitted. The mere fact that his return showed a net income for the taxable year 1929 in the sum of $40,424.66 and the respondent, in recomputing his tax liability, determined that the net income for that year was $73,435.38, by itself, does not establish fraud. If it did, then all taxpayers against whom deficiencies are determined would be guilty of fraud and subject to the imposition of a fraud penalty. Nor does the lack of evidence to sustain the petitioners' contentions prove fraud. As stated in L. Schepp Co.,supra, "both parties may fail through inadequate proof in their several issues, and thus the deficiency would be sustained and the penalty set aside. *375 " The burden of proving fraud is upon the respondent and his proof must be clear and convincing. * * * In this case there is no evidence that petitioner had any unreported income for any of the years here in issue and a total lack of proof of an underpayment of tax, a part of which is due to fraud. Aside from the presumption attaching to respondent's notice of deficiency and the dismissal of the petition as to the deficiencies, there is nothing to show underreporting of income by petitioner. In fact, there are indications in the evidence, such as the fact that petitioner bought a Cadillac or Lincoln Mercury new each year from 1960 through 1971 and petitioner's testimony as to his stock transactions, that petitioner had substantial funds prior to the years here in issue. In any event, respondent has totally failed to show by clear and convincing evidence that any part of the underpayment of tax by petitioner was due to fraud with intent to evade tax. [4]
*376 Respondent argues that the substantial understatement of income by petitioner for each of the three years 1969, 1970, and 1971 is indicative of fraud. As heretofore stated, these understatements of income have not been shown by the evidence in this case even though, for the purposes of determination of the deficiencies, they are presumed to be correct. Furthermore, although substantial understatements of income over a number of years are considered indicative of fraud, it is not conclusive evidence of fraud. Fraud is never presumed but must be established by either direct or circumstantial evidence. See Lessmann v. Commissioner,327 F.2d 990, 993 (8th Cir. 1964), affirming a Memorandum Opinion of this Court. Respondent argues that the record shows that petitioner made misleading statements to the revenue agent. While there are some slight inconsistencies in the statements made by petitioner to the Revenue agent in a first conference and in a conference about six months later, most of the statements are consistent. The record shows that, in general, petitioner was cooperative with the Revenue agent. Respondent argues that petitioner's testimony should not *377 be believed and that the testimony of petitioner's cousin and mother was confused. However, if we were to accept respondent's argument in this respect, it does not establish fraud since "the Commissioner's heavy burden of proof on the issue of fraud cannot be satisfied by mere disbelief of taxpayer's testimony." Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), affirming in part and reversing in part a Memorandum Opinion of this Court. Fraud is a question of fact. Respondent must establish the fact of fraud by clear and convincing evidence. Considering all the evidence of record, we conclude that respondent has failed to establish that any part of petitioner's underpayment of tax was due to fraud. Since respondent affirmatively alleged that there is an addition to tax under section 6653(a) in each of the years here in issue and an addition to tax for 1970 under section 6651(a)(1), the burden is on respondent to show under section 6653(a) that a part of the underpayment is due to negligence and under section 6651(a) that the failure to timely file the return was not due to reasonable cause. Sanderling, Inc. v. Commissioner,66 T.C. 743, 757 (1976). *378 [4]
Respondent argues that he should not have the burden to prove the addition to tax under section 6653(a) although this issue was raised affirmatively in his answer. He recognizes that we have held otherwise but argues we should overrule our holdings to this effect. Respondent's contention is that negligence is so closely related to fraud that the negligence issue should be considered merely a "more specific" version of the fraud issue. In our view, the differences in the negligence issue on which respondent does not bear the burden of proof except where it is affirmatively raised in the answer and the fraud issue on which the burden of proof is placed *379 on respondent by statute are sufficiently different that they cannot be considered as the same issue. Certainly respondent is required to establish negligence merely by a preponderance of the evidence and not by clear and convincing evidence as in the case of fraud. However, the evidence in this record is insufficient to establish negligence. Respondent has, however, offered sufficient evidence to show that petitioner's failure to timely file his 1970 return was not due to reasonable cause. Petitioner had filed returns for previous years. Petitioner had studied accounting. Since 1960 he had had his returns prepared by a certified public accountant. The facts certainly show that petitioner was aware of the duty to timely file a return for 1970 and convey an inference that his failure to do so was not due to reasonable cause. Petitioner offered no explanation as to why he did not timely file his 1970 return. Considering all the evidence in the record, we conclude that respondent has shown that petitioner's failure to timely file his 1970 Federal income tax return was not due to reasonable cause. Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise stated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years here in issue.↩
2. Respondent's argument in support of his claim for the addition to tax under sec. 6651(a) is on the basis that a 1970 return was untimely filed. Since the 1970 return was not signed, it might be considered as no return. We have, however, addressed the sec. 6651(a) issue as it was argued by respondent.↩
3. Obviously, some of the sales price received for stock may have been rollovers. For instance, on March 2, 1970, petitioner sold stock for $19,197.11 and on March 30, 1970, bought stock for $26,809.94. The record does not show whether some of the purchases were with funds from other sales.↩
4. We have not overlooked the fact that there are in the record in this case an original request for admissions and a second request for admissions to which petitioner did not respond. Petitioner did respond to a third request for admissions and primarily the requests for admissions were denied. Respondent did not move for summary judgment on the basis for the requests for admissions to which petitioner did not respond nor did he introduce them into evidence. There is some indication in the record that petitioner never actually received either of these requests for admissions. The first request was served on petitioner's counsel who shortly thereafter, in asking to withdraw from the case, stated that he had been unable to contact petitioner with respect to that request for admissions. Both of these requests for admissions ask that petitioner admit that his returns for each year were false and fraudulent, that he fraudulently failed to file a return for 1970, that the income determined by respondent was correct and his failure to report it was due to fraud. Had the matter been brought up at the trial of this case, the Court, on petitioner's request (as it is authorized to do under Rule 90(e), Tax Court Rules of Practice and Procedure), would have relieved him from these admissions of legal conclusion. No mention was made of these unanswered requests for admissions at the trial. The extent to which a Court should consider such requests for admissions when they are not brought to its attention at the trial is at most discretionary. See Dependahl v. Falstaff Brewing Corp.,491 F.Supp. 1188 (E.D. Mo. 1980); Robinson v. Navajo Freight Lines, Inc.,70 N.M. 215, 372 P.2d 801 (1962); Foellmi v. Smith,15 Wis.2d 274, 112 N.W.2d 712 (1961); Sakal v. Donnelly, 30 Colo. App. 384, 494 P.2d 1316↩ (1972). We consider that in this case it would be totally unfair to in any way rely on petitioner's failure to answer these requests for admissions. Under the circumstances of this case, both in the exercise of our discretion not to consider the requests for admissions and by relieving petitioner from the admissions, we will not consider them. At the beginning of the trial and during the course of the trial, the Court called to the attention of counsel for respondent the fact that the burden was on him to show that there was some underpayment of tax in each of these years, a part of which was due to fraud. The Court specifically pointed out that reliance could not be placed on the determination of the deficiencies against petitioner as a sanction as supplying the required proof.
4. Sandering, Inc. v. Commissioner,66 T.C. 743 (1976), involved only the addition to tax under sec. 6651(a). However, Dunn v. Commissioner,T.C. Memo. 1978-204, followed the holding in Sanderling, Inc. as to burden of proof of the addition to tax under both secs. 6651(a) and 6653(a). See also Pickett v. Commissioner,T.C. Memo. 1975-33↩, which also held that respondent has the burden to prove negligence under sec. 6653(a) where he affirmatively pleads it in his answer.