HAYWARD v. DOWNING et al. WRIGHT v. SAME.

Nos. 7071, 7072. Decided February 5, 1948. (189 P. 2d 442.)

See 62 C. J., Theaters and Shows, sec. 64. Duty and liability of owner or keeper of amusement respecting injuries to patrons, see note 99 A. L. R. 557. See, also, 52 Am. Jur. 290.

*N. H. Tanner* and *Hanson & Hanson,* all of Salt Lake City, for appellants.

*Gustin & Richards,* of Salt Lake City, for respondents.

WOLFE, Justice.

Two separate appeals by separate plaintiffs from separate judgments of non-suit rendered in the Third District Court in and for Salt Lake County.

The facts of these two cases are substantially identical except as to the damages to the respective plaintiffs, with which we are not here concerned. The two cases were tried together in the court below and are considered together here on appeal. The facts are substantially without dispute, and, insofar as material here, are as follows:

The two defendants were co-partners engaged in the promotion of wrestling matches for public exhibition. The bouts were held in the colosseum building at the State Fair Grounds in Salt Lake City, of which building defendants were lessees. Wrestling shows were held weekly from early in the autumn until late spring or early summer. Wrestling matches were ordinarily held on Friday evenings, but occasionally on Thursday evenings. Boxing matches were held on other nights.

A group of teen-aged youths from Bountiful, Utah, of whom the respective plaintiffs were two, were in the habit of attending the wrestling matches conducted by the defendants. Not all of the boys of the Bountiful crowd attended every week, but some of them were always there.

The matches were held on a stage or platform in the center of the colosseum building. Seats for the patrons extended in all directions from the stage, each row of seats being elevated slightly above the row immediately in front of it. On the east wall of the arena there was what was indiscriminately described as a small platform or balcony or alcove. This was about 15 feet above the horizontal floor

and about 5 feet above the last row of seats which were immediately below it. There were no stairs, steps, ladder, ramp, or other ordinary device by which customers could reach this platform or alcove, nor were any seats, chairs, stools, benches, bleachers, or other accommodations provided for the seating of patrons on this platform.

Early in the autumn of 1945 the Bountiful boys observed that some of the patrons of the wrestling matches were seated on this platform, and they concluded that such was an excellent vantage point from which to watch the exhibitions. The following week the Bountiful boys climbed up there to watch the bouts. They were ordered to come down by one of the attendants, but were informed that if Mr. Downing, one of the defendants, said it was all right they might remain up there. Thereupon the boys sought permission from Mr. Downing to sit upon the platform, and he told them that they might do so if they would sit quietly and not hang their legs over the edge, and be careful not to kick dirt and debris down onto the customers in the seat below.

Thereafter, each week the Bountiful boys would come early, purchase tickets to the show, and then secure permission from Mr. Downing to sit upon the platform. They always made it a point to get Mr. Downing's permission, so that in case any of the ushers or other attendants should order them down they could say that they had permission from Mr. Downing to be there.

The boys gained access to the platform by grasping an iron beam with their hands and swinging "Tarzan-like" onto the platform. Apparently the platform was never cleaned, and there was a considerable amount of dirt and debris up there. The boys were accustomed to throw cardboard boxes up there and tear them up to sit upon, so that they wouldn't soil their clothes.

On the evening of April 26, 1946, some of the Bountiful boys, including the two plaintiffs, were sitting upon this platform and watching the matches. As usual, they had purchased tickets and had secured permission from Mr. Downing to sit there. During the progress of the last bout

the platform collapsed and fell to the floor, and the two plaintiffs were injured. They brought these actions for the damages thereby sustained.

It appeared that about four weeks before this accident some of the Bountiful boys had been sitting upon this platform, and two men from Salt Lake City, also patrons of the wrestling matches, had climbed up there. The platform sagged a few inches, whereupon the two men from Salt Lake left the platform. The Bountiful boys remained on the platform that evening, and had continued to sit there upon subsequent evenings until the collapse of the platform as described above.

At the conclusion of the plaintiffs' evidence, the court, upon motion of defendants, ordered non-suits in both cases. From these judgments of non-suit, and from the orders denying a new trial in each case, plaintiffs prosecute these appeals.

The chief question here involved is as to the status of the plaintiffs at the time of their injuries. It is admitted by defendants that plaintiffs were invitees upon the premises. However, defendants contend that plaintiffs went beyond the limits of their invitation when they climbed up onto the platform, and that when they were up there they were, at most, licensees. Plaintiffs concede that if they were nothing more than licensees they are not entitled to recover, but they contend that they did not lose their status as invitees by going up onto the platform.

It is well settled, of course, that the owner or occupant of lands who invites others to come upon his premises for some purpose of interest or advantage to him, owes to such persons a duty to use ordinary care to have his premises in a reasonably safe condition. This includes the duty to warn of latent or concealed defects known to the occupier. An occupant violates his duty to an invitee when he negligently allows conditions to exist on the property which imperil the safety of persons upon the premises, and he is responsible in damages to an invitee thereby injured. 38 Am. Jur. 754, Negligence, Sec. 96.

A person may be an invitee as to a part of the premises, and a mere licensee or trespasser as to other parts of the premises. A common example of this is a store. As a general rule the public is invited to enter the store for the purpose of transacting business. However, this invitation ordinarily extends only to that part of the store where goods are displayed for sale and business is ordinarily transacted. Generally, the public is not invited to enter the stockrooms, furnace rooms, and other parts of the store, and if persons go to these parts of the premises they lose their status as invitees and become mere licensees or trespassers. 38 Am. Jur. 761, Negligence, Sec. 100. See also *Lawand* v. *California Products Co.,* 9 Cal. App. 2d 147, 48 P. 2d 979.

An invitee is ordinarily one who goes upon the premises of the owner or occupant for the purpose of transacting business, or for the mutual benefit of each of them, or for the benefit of the occupant. He may be expressly invited to come upon the premises, but more commonly his invitation is implied. The operator of a store, public amusement place, shop, or business office impliedly invites the general public to enter and purchase whatever goods or services he offers for sale. A licensee, on the other hand, is one who enters with the express or implied permission of the owner, for his own advantage, and not for any advantage of the owner or occupant. For collection of cases distinguishing between invitees and licensees see Vol. 22, Words and Phrases, Perm. Ed., pages 575-581.

It is undisputed that when plaintiffs purchased tickets and entered the colosseum building they came as invitees and not as licensees. The only question is as to the extent of their invitation—was it limited to the regular seats, or did it include also the platform upon which plaintiffs were sitting at the time they were injured?

The defendants rely on *Bird* v. *Clover Leaf-Harris Dairy,* 102 Utah 330, 125 P. 2d 797, 798. In that case plaintiff's son was a milk tester whose duties required him to come

upon defendant's premises. It was admitted that when the son was in the building performing his duties he was an invitee.

The defendant provided a parking area in which employees and other persons visiting its dairy might park their automobiles. However, plaintiff's son, who was driving plaintiff's automobile, did not park in the regular parking area, but under a canopy. It was against the rules of defendant to park under the canopy, but the rule was unknown to plaintiff's son, and was generally disregarded by defendant's employees. The canopy collapsed upon plaintiff's automobile, and plaintiff sued for damages to his car. In holding that plaintiff was not an invitee, this court, speaking through Mr. Justice Pratt, said:

"Even though the parking of automobiles under the east canopy where there were no doors, might have misled the uninitiated into believing that such space was intended for general parking purposes, it is rather a stretch of reasoning to believe that the space in front of the garage doors was intended for parking purposes. That is not common sense. The very fact that there were doors here was a warning that it was not a parking place. The fact that the other cars were parked under the canopy at places where there were no doors would impress the average person with the thought that the garage entrances should be left clear."

The above quotation, we think, points up the distinction between that case and the case at bar. In the *Bird case* plaintiff's car was parked in a place prohibited by the defendant, and there were circumstances positively indicating that cars should not be parked there. In the instant case, plaintiffs were sitting in a place where they had express permission to sit and where they and other patrons had sat throughout the course of the winter.

We think this case is more like *Hupfer* v. *National Distilling Co.*, 114 Wis. 279, 90 N. W. 191. In that case, plaintiff's intestate purchased slop from defendant for swine feed. The slop was in a large vat. Defendant hired a man to stir the slop for purchasers, but decedent insisted on stirring the slop himself, so that he could be sure that he got "thick

slop." Defendant permitted decedent to stir the slop himself, so that it would not lose decedent's trade. While decedent was standing on a platform stirring the slop, the vat burst, and he was scalded to death. It was admitted that decedent was an invitee on defendant's premises, but defendant contended that when decedent mounted the platform, he was, at most, a licensee while on the platform. The Wisconsin court took the view that decedent was an invitee, even upon the platform. Defendant benefited from decedent's being on the platform in that by permitting decedent to stir the slop himself, defendant retained his trade and good will. See Harper on Torts, Sec. 98, at p. 228. In the case at bar it may be well argued that defendants benefited by permitting the Bountiful boys to sit upon the platform in that they secured the good will and continued patronage of those boys, including the two plaintiffs.

In 38 Am. Jur. 794, Negligence, Sec. 133, the rule is stated thus:

> "The duty of the proprietor of a place of business which is open to public patronage to use ordinary care to make the premises safe for customers is generally limited to that part of the premises designed, adopted and prepared for the accommodation of customers, *or to which customers may reasonably be expected to go.*" (Italics added.)

It may be that in the first instance, the invitation extended to the plaintiffs by defendants was limited to the regular seats and bleachers. But when one of the defendants expressly consented that plaintiffs sit upon the platform, the invitation was broadened to include the platform, at least as to plaintiffs. We do not wish to be understood as holding that in every case where an invitee as to one part of the premises receives permission to go upon another part of the premises, he thereby becomes an invitee as to such second part. Our holding is limited strictly to the facts of this case—where an invitee as to one part of the premises, receives permission to go upon another part of the premises in furtherance of the object or purpose for which he was originally invited upon the premises (in this

case, to view the wrestling matches) he becomes an invitee as to such second part of the premises. As to other and different fact situations, we express no opinion.

Plaintiffs alleged in their complaint that

"* * * said platform was constructed by the said defendants for the purpose of placing a microphone thereon and from there to broadcast the progress of the wrestling matches * * *."

There is nothing in the record to show that defendants constructed the platform or any other part of the building. Nor does the record show for what purpose the platform was originally constructed, nor that defendants ever used the platform for the purposes alleged in the complaint. Defendants seem to take comfort from this situation. We cannot see that these matters are material. Defendants were lessees in possession of the building, and had control of the platform the same as any other part of the building. Nor is it material for what purpose the platform may have been originally constructed and intended to be used. When defendants invited their patrons to sit upon it, they had the duty of maintaining it in reasonably safe condition. See *Winterowd* v. *Christensen et al.*, 68 Utah 546, 251 P. 360.

Defendants further contend that even though plaintiffs were invitees, the judgment ought to be affirmed because there was no showing of negligence on the part of the defendants. With this contention we cannot agree. Defendants having permitted plaintiffs to sit upon the platform, they were bound to exercise ordinary care to maintain it in safe condition for the accommodation of spectators invited to sit there, just as they were bound to exercise ordinary care to maintain the regular seats and bleachers in safe condition for the accommodation of customers. From the fact that the platform collapsed, and that it was in the exclusive possession and control of the defendants, it may be inferred that the defendants failed to exercise reasonable care to keep the platform in safe condition for the seating of spectators.

Reversed and remanded for new trial. Costs to appellants.

McDONOUGH, C. J., and PRATT, WADE, and LATIMER, JJ., concur.