John RUSH, a Minor, by his Mother and Next Friend, Betty Rush, Plaintiff in Error,

v.

John MULLINS, d/b/a Arena Roller Rink, and Arlis Snyder, Defendants in Error.

No. 39383.

Supreme Court of Oklahoma.
March 13, 1962.
Rehearing Denied April 10, 1962.

Paul W. Brightmire, Tulsa, for plaintiff in error.

Frank R. Hickman, Tulsa, for defendants in error.

PER CURIAM.

The evidence of the plaintiff as to how the accident happened is as follows:

"Q. Would you tell these gentlemen how come you to fall?

"A. Well, as this other boy told you, we were skating around, and this other trio came up in a train style, and they went around his side and cut in front of him, and so it shook him a little bit, and the girl in the middle, she got shook, shook up a little bit, and the other boy fell. We kept on going sort of slow, slowed down a bit so he could catch up, and when he caught up, about the time he got the girl's hand again, I guess, they came by my side, and the end boy on the train, they had their arms out where they were holding the other one's hip, he brushed against me, caused me to sort of get nervous, and this girl, she started shaking a little bit, and I fell, and I let go so I would fall because I knew they would wait for me so I could catch up, and then I started to get up, and this—I believe it was a big boy, a man came by and went over my arm.

"Q. His roller skates went right over, or at least over your arm?

"A. Yes. * * *"

His mother was notified and she came and took him to the hospital. Both bones in the lower part of his right arm just above the wrist were fractured according to the testimony of the doctor who treated him.

Roger Scott testified, in part:

"Q. Did anything unusual occur while you were out there, the three of you skating as a trio?

"A. Well, there was one group of kids skating, and they weren't skating in a trio, three abreast, they were one right behind each other like a train.

"Q. Holding on, one holding on to the hips of the front one?

"A. To the hips.

"Q. They were behind each other?

"A. Yes.

"Q. All right, what happened?

"A. Well, we were skating around—they came up by us and they were going pretty fast, and they came by us and I lost my balance and fell.

"Q. Did they hit you?

"A. No.

"Q. All right. Now, that is the first time around?

"A. That was the first time around. And then I got up, and caught up with John and Patty, and they—about the time that I caught up with them and got ahold of Patty's hand, they came around—they were back around again, and then Jack fell about that time, after they passed.

"MR. HICKMAN: What did he say?

"A. John fell.

"Q. (By Mr. Brightmire) Now, directing your attention to the second time around when you had just caught

up with the other two, were you hit by these people coming around behind each other?

"MR. HICKMAN: Objected to as immaterial whether or not he was hit or not.

"THE COURT: Overruled.

"A. Should I answer?

"Q. (By Mr. Brightmire) Yes.

"A. I don't recall whether I was hit.

"Q. Was Patty hit?

"A. I think Patty was shaken up. I don't think she was hit. I believe she lost her balance.

"Q. Would you describe it as a brushing action?

"MR. HICKMAN: We object to this leading.

"THE COURT: Don't lead him, just ask what transpired.

"Q. (By Mr. Brightmire) Well, all right, was anybody hit, actually fully—first of all run into?

"A. No, sir.

"Q. Was any of the three touched by the people running in there behind each other?

"A. Well,—I mean, I can't say whether they were—I didn't see it, see whether or not one of them were touched. * * *"

The facts are one of the defendants, John Mullins, doing business as Arena Roller Rink, was the owner and the other defendant, Arlis Snyder, was the general manager and one McWaters was floor manager at the time of the accident. Arlis Snyder called as a witness testified in part:

"Q. All right. What are the duties of the floor manager?

"A. The duties of the floor manager, in the case of Mr. McWaters, was to organize the program as seems suitable for the crowd which was there. That is, he would designate when the couples were to be skated, when trios were to be skated and the manner in which these numbers were to be skated and so forth, grand march if we had it, he was to direct that, run it.

"Q. Go ahead.

"A. It was his duty to deter any rough stuff, any people who were acting out of line with safety, good safety procedure on the floor. It was even his duty if necessary to require people to leave the floor if they misbehaved in such a manner. I think that is—does that answer the question?

"Q. I think so, if you have given us all of his duties. Now, of course, that is standard practice in running an arena as you have found it?

"A. Oh, yes."

We have examined all the evidence of this witness and none of it tends to show negligence on the part of the defendants in the operation of the skating rink at the time of the accident. And the evidence of the plaintiff and the evidence of Roger Scott is not sufficient to establish actionable negligence. In St. Louis-San Francisco Ry. Co. et al. v. Witty, Okl., 327 P.2d 453, we held in paragraph one of the syllabus:

"To constitute actionable negligence, where the wrong is not willful and intentional, three essential elements are necessary: (1) The existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) failure of the defendant to perform that duty; and (3) injury to the plaintiff resulting from such failure."

In Hembree Chevrolet v. Southard, Okl., 339 P.2d 771, we held in paragraph one of the syllabus:

"To establish actionable negligence it is fundamental that one seeking recovery must show the existence of a duty on the part of the one sued not to subject the former to the injury complained of, a failure to observe such duty, and an injury resulting proximately therefrom."

Affirmed.

The court acknowledges the aid of Supernumerary Judge N. S. CORN in the preparation of this opinion. After a tentative opinion was written, the cause was assigned to a Justice of this court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the court.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and WELCH, HALLEY, JOHNSON, JACKSON and IRWIN, JJ., concur.