Sharon Lee STILLWELL, Appellant,

v.

The CITY OF LOUISVILLE, Appellee.

Court of Appeals of Kentucky.

June 5, 1970.

Joe G. Leibson, Louisville, for appellant.

Richard C. Oldham, Louisville, for appellee.

REED, Judge.

The appellant, Sharon Lee Stillwell, plaintiff in the court below, challenges the ruling of the trial judge who held that she had failed to establish a submissible case of negligence against the defendant-appellee, City of Louisville, in her action for personal injuries sustained while she was a patron at a swimming pool operated by the city. At the conclusion of her evidence, a verdict in favor of the city was directed. Judgment was entered on the directed verdict; the plaintiff's claim was dismissed. We reverse and hold that a jury issue was presented by the plaintiff's evidence.

The plaintiff's evidence, together with all reasonable inferences that could have been drawn from it, established that she and her sister went to the swimming pool operated by the defendant for the purposes for which the facility was maintained. They paid the required fees for admission. The plaintiff occupied the status of an invitee. The defendant was cast in the role of a proprietor of business premises which in this case consists of a place of public amusement.

The plaintiff, a seventeen-year-old girl, stayed down at the shallow end of the pool where the water was about three feet deep. She first conversed with a lifeguard whose station was at the shallow end of the pool. He excused himself and informed her that he had completed his hours of duty. He advised her that another guard would take his place. She said another guard did not replace him. According to plaintiff, this left only one guard on duty whose station was at the deep end of the pool.

After the guard with whom plaintiff had been conversing left, she entered the pool. Shortly thereafter, she was "flipped" by a young man with whom she was acquainted named Jefferson Joseph Bralley. Bralley was eighteen years old, six feet two inches in height and two hundred fifteen pounds in weight. The "flipping" was described in this manner:

"He came up between my legs and just threw me head over him. I just went over the top of his head and then I went down."

On this occasion, the plaintiff said, her nose was injured. About five minutes later Bralley "flipped" her again. This time she struck the back of her head and was injured. She told Bralley to "quit and leave me alone. I'm hurt." Then she left the water and sat on the side of the pool with her sister. She experienced pain and discomfort. She bled from her nose and ears. She got back in the water to cool off and Bralley "flipped" her a third time. Another boy helped her out of the pool and she finally made it home by walking, since her phone call to her parents revealed that they were not at home. She sustained serious injuries.

Both the chief lifeguard at the swimming pool where plaintiff was injured and the Director for Safety Programs for the American Red Cross, Louisville Area Chapter, testified that under the printed safety standards for the operation of swimming pools adopted by both the Red Cross and the City of Louisville, horseplay in swimming pools is directed to be prevented and controlled by lifeguards. There was further evidence from which it could be reasonably found that the standards required three lifeguards on the occasion in question, but only one was provided. There was evidence to the effect that under the City's own safety regulations, no lifeguard was supposed to leave his station until his replacement arrived.

Bralley testified that plaintiff did not know and was not aware that she was going to be "flipped." He also testified that he had been "flipping" other girls earlier that day—maybe as many as eight different girls. Other boys were also "flipping" girls that day.

There was also evidence introduced upon behalf of plaintiff that in other swimming pools operated by the city "flipping" was not permitted and the rule against it was

strictly enforced. The testimony by the chief lifeguard in charge of the pool where plaintiff was injured was to the effect that "flipping" was not considered dangerous, but rather was considered as normal fun; he stated that at the pool in question as wide a range of conduct as possible was permitted. The trial judge was of the opinion that the plaintiff's evidence did not permit an inference of negligence causative of plaintiff's harm and directed a verdict for the city.

The standard imposed upon the proprietor of a place of public amusement with respect to injuries to patrons caused by boisterousness or playfulness of others is delineated sometimes in negative terms but other times in positive fashion. For example, 86 C.J.S. Theaters and Shows, § 46 (3), page 741, declares:

"Ordinarily, the proprietor of a place of public amusement will be liable for misconduct or negligence of other patrons or third persons only where there was a reasonable apprehension of danger from such conduct, or where injury resulting therefrom could have been prevented by the exercise of reasonable care by the proprietor; * * *."

16 A.L.R.2d, page 932, also states:

"It is not uncommon for patrons of public amusements to be injured as a result of the horseplay, boisterousness, or other playfulness of others. It has been held or recognized that the proprietor or operator of such an amusement is liable to the patron for the injuries thus sustained, provided he has sufficient notice to enable him to stop such activities."

A more positive statement may be found in 48 A.L.R.2d, page 165:

"The fact that the direct cause of the patron's injury was boisterous conduct by other patrons or other third persons has been held not to insulate the proprietor from liability, where it was his duty, under the circumstances, to protect the patron against injury from such an agency."

The Restatement of Torts 2d, section 344, pp. 223, 224, also declares that the proprietor is subject to liability to an injured patron for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons, and by the failure of the proprietor to exercise reasonable care to discover that such acts are being done or are likely to be done, or to protect the patron against such harm.

In Bartley v. Childers, Ky., 433 S.W.2d 130 (1968), we pointed out that the proprietor of a swimming pool had a duty to prevent horseplay. It appears to us that "flipping" may be defined technically as boisterous conduct with injury as a foreseeable consequence even though there is absence of an actual intent to do harm. Cf. 29 A.L.R.2d pp. 917, 918.

In the case before us, there is evidence of boisterous conduct prior to plaintiff's injury; the safety standards prohibited this type of conduct; a jury could permissibly find that the City did not use ordinary care under the circumstances to discover and prevent the conduct which caused the plaintiff's injuries. The argument that maybe a lifeguard present would not have prevented the harm is not persuasive. In the first place, a jury would have the right to infer to the contrary. In the second place, the standards themselves and their strict enforcement by the same proprietor at other pools constitute evidence that the very harm designed to be prevented is the harm that in fact occurred. See Chesapeake and Ohio Railway Company v. Biliter, Ky., 413 S.W.2d 894 (1967).

The plaintiff admitted that she did not report the incidents to a lifeguard. She said there was no lifeguard present. Ordinarily, a patron of a place of public amusement does not assume the risk of injury from the negligence of third persons which could have been prevented by the proprietor. See 86 C.J.S. Theaters and

Shows § 47, page 748. In the instant case, a jury might well regard the plaintiff's conduct as reasonable under the circumstances. The jury could believe that her reliance on Bralley's desisting upon her request, though inaccurate, was not beyond ordinary prudence on her part. The issue before us, however, is whether the evidence demonstrated plaintiff to be contributorily negligent as a matter of law. We hold that she was not.

The evidence, in our opinion, established a submissible case on the issue of defendant's negligence. The plaintiff has not yet been shown contributorily negligent as a matter of law. Those issues are all that are before us and they are the only issues we purport to decide.

The judgment is reversed for further proceedings consistent herewith.

All concur.