**Stephen L. BISHOP, et al.,**
**Plaintiffs-Appellants,**

v.

**FAIR LANES GEORGIA BOWLING,**
**INC., Defendant-Appellee.**

No. 86–8086.

United States Court of Appeals,
Eleventh Circuit.

Nov. 12, 1986.

**1549**

William C. Campbell, Michael D. Goodman, Chester G. Rosenberg, Atlanta, Ga., for plaintiffs-appellants.

Lowell S. Fine, Harry J. Winograd, Atlanta, Ga., for defendant-appellee.

CORRECTED OPINION

Before HILL and FAY, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

The United States District Court for the Northern District of Georgia granted defendant-appellee Fair Lanes Georgia Bowling, Inc.'s (Fair Lanes) motion for summary judgment in this commercial premises liability case, 623 F.Supp. 1195. While we agree with much contained in the district court's order, we reverse the grant of summary judgment and remand the case to the district court for trial.

Appeal arises from a violent altercation that occurred in the parking lot of Fair Lanes' bowling alley located in Norcross, Georgia. Plaintiffs-appellants Stephen Bishop and Deborah A. Smith were beaten severely in the brouhaha, with Bishop suffering especially egregious injuries. The Bishop group[1] sued Fair Lanes, alleging that it was liable for failing to exercise ordinary care in keeping the premises and approaches of the bowling alley safe for Bishop, an invitee, when Fair Lanes had actual or constructive knowledge of a dangerous condition and for continuing to serve alcoholic beverages to noticeably intoxicated patrons when the subsequent violent attack on Bishop was reasonably foreseeable.

The Bishop group attended a Fair Lanes "Midnight Madness" bowling extravaganza on the evening in question, arriving at approximately 1:00 A.M. After bowling for a period of time, the group noticed that its pitcher of beer was missing. One of the Bishop group then approached three bowlers on the adjoining lane and questioned them as to the whereabouts of the missing beer. This trio—Janet Eldridge, Randall

---

1. Although not present on the evening of the attack, plaintiff-appellee Randy L. Smith joined in the suit seeking compensation for loss of consortium rights.

For ease of citation the three plaintiffs-appellants will be referred to as "the Bishop group."

Eldridge and Steven Burke[2]—took umbrage with the query and came over to the Bishop group's lane and began a loud conversation. The conversation clearly was heated and hostile; it lasted for somewhere between several minutes to half an hour. Although at least one of the Burke group suggested that they "go outside" and resolve the matter, no blows were struck or fists raised.

At the end of this repartee two separate members of the Bishop group went to the front counter to tell the manager on duty what had happened. They specifically told the manager that the Burke group was drunk, "loud," "unruly," "making a lot of commotion," and had acted in an *"aggressive"* manner toward the Bishop group. Furthermore, Deborah Smith told the manager that the Burke group made her "uneasy" and "uncomfortable." Both requested that the manager keep an eye on the Burke group for the balance of the evening.

The Burke group thereafter proceeded to "harass," "taunt" and "cause a difficult time" for the Bishop group until the alley closed at around 2:30 A.M. This harassment was verbal in nature, although the Burke group came over to the Bishop lane "on several occasions" to ask what had happened to the now infamous pitcher of beer.

As the bowling alley closed, Steve Burke approached Smith and Bishop and another caustic exchange ensued. Burke stated that he did not take the beer, but that if someone took *his* beer he would "beat ass." He also explained that if someone tried to harm his friends he would "beat ass" as a way of helping out a buddy. This was taken, not as a threat, but as a warning to stay away from Burke.

The Burke group then left the building while the Bishop group elected to wait a few minutes in hopes of avoiding additional unpleasantness or confrontation in the parking lot outside. A Fair Lanes employee locked the doors behind the Bishop group as they exited since they were the last patrons to leave. A violent melee occurred in the parking lot when the Burke group accosted Bishop and Deborah Smith at their car, Burke beating Bishop into unconsciousness.[3] Deborah Smith managed to flee and alert a Fair Lanes employee who called the police.

So far as Fair Lanes is concerned, the manager on duty and his assistant took little if any action. They watched the Burke group for about five minutes after the Bishop group complained about the first incident. The manager and assistant manager, however, did not separate the two groups by placing them on nonadjoining lanes, speak to the Burke group about their behavior, or tell the refreshment stand to stop selling beer to the Burke group, even though they were visibly intoxicated. The manager also stated in a deposition that he was unaware of the original confrontation until it was reported to him by members of the Bishop group, even though the argument took place in plain view of the front counter, was quite obstreperous, lasted anywhere from several minutes to a half hour, and caused all bowling to cease on the two lanes for the duration of the argument.

The district court found that there was evidence from which one could conclude that the Burke group had been drinking extensively prior to its arrival at the bowling lanes. It took note of evidence indicating that the members of the Burke group "were visibly intoxicated when they purchased beer by the pitcher at Fair Lanes." Additionally, the district court noted that the suggestion to "go outside" was made in a "threatening" manner.[4]

2. For ease of citation this trio will be referred to as "the Burke group."

3. It is undisputed that there had been no prior physical altercations of this type in the Norcross parking lot.

4. The Burke group's request to "go outside" apparently was not communicated to the manager.

Georgia law specifically provides that an owner or occupier of land may be held liable if he fails to exercise ordinary care in keeping his premises safe. O.C.G.A. § 51–3–1.[5] Furthermore,

> it is the duty of a proprietor to protect an invitee or guest from injury by a third person if the host is reasonably aware of the probability or likely possibility of such an act by a third party and such injury could be avoided through the exercise of ordinary care and diligence. . . . In order to affix liability in the case of an illegal act, the host must have had reasonable grounds to believe that a particular criminal act is likely to occur.

*Donaldson v. Olympic Health Spa,* 175 Ga.App. 258, 333 S.E.2d 98, 100–01 (1985); *see Great Atlantic & Pacific Tea Co. v. Cox,* 51 Ga.App. 880, 181 S.E. 788 (1935); *Moone v. Smith,* 6 Ga.App. 649, 65 S.E. 712, 713 (1909).

The danger must be apparent or foreseeable, and not the result of sudden unexpected actions, before the proprietor's duty of care attaches. *See Church's Fried Chicken, Inc. v. Lewis,* 150 Ga.App. 154, 256 S.E.2d 916, 919 (1979); *Lincoln v. Wilcox,* 111 Ga.App. 365, 141 S.E.2d 765, 767 (1965). It also is worth noting that the duty owed is to keep the premises "safe," not "reasonably safe," *Flint River Cotton Mills v. Colley,* 71 Ga.App. 288, 30 S.E.2d 426, 427 (1944), a distinction of significance under Georgia law. *See Massey v. Georgia Power Co.,* 85 Ga.App. 593, 69 S.E.2d 824, 826 (1952). Additionally, whether the owner has breached his duty of care generally is a jury question. *See, e.g., Church's Fried Chicken Inc. v. Lewis,* 150 Ga.App. 154, 256 S.E.2d 916 (1979); *Hall v. Davis,* 75 Ga.App. 819, 44 S.E.2d 685 (1947); *Moone v. Smith,* 6 Ga.App. 649, 65 S.E. 712 (1909).

In short, if the potentially violent acts of the Burke group were reasonably foreseeable from the information about which Fair Lanes was or should have been aware, Fair Lanes is liable if it took no action to avoid the potential physical clash. The linchpins of the Bishop group's cause of action thus are foreseeability, aggression, and the actual or constructive knowledge of Fair Lanes. It will be for the jury to decide if the physical assault in this case was a sudden act taken without warning to Fair Lanes or the culmination of an evening's worth of confrontation, taunting and harassment and that Fair Lanes was made aware of the conflict well before it erupted into physical violence.

It is uncontroverted that the individual members of the Burke group were noticeably intoxicated; that the two groups engaged in a heated and hostile disagreement; that the Bishop group twice notified the Fair Lanes manager that the Burke group was loud, obnoxious, drunk, and acting in an aggressive manner that made at least one member of the Bishop group uneasy and uncomfortable. It also is uncontroverted that Fair Lanes took virtually no steps to observe the two groups but for a few minutes. Additionally, Fair Lanes continued to serve beer to the Burke group even though that trio was unquestionably intoxicated to a noticeable degree. *See* O.C.G.A. § 3–3–22.[6]

▮▮▮ Whatever our own view may be, we believe a jury could reasonably find that it is not a "rare event" in human experience for loud and aggressive talking drunks to get into fights at 2:00 A.M. on a Saturday morning. *See generally Razdan v. Parzen,* 157 Ga.App. 848, 278 S.E.2d 687 (1981) (An event is not foreseeable if it is a "rare event in experience"). Additionally, in our view, a jury reasonably could find, under the facts, that Fair Lanes should

---

**5.** O.C.G.A. § 51–3–1 provides:

Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable to exercise ordinary care in keeping the premises and approaches safe.

**6.** O.C.G.A. § 3–3–22 provides that "no alcoholic beverage shall be sold, bartered, exchanged, given, provided, or furnished to any person who is in a state of noticeable intoxication."

have been aware of a potential physical altercation before it actually occurred and was, therefore, negligent in taking no action to avoid the potentiality and thereby make its premises safe for its invitees. This case presents a classic factual question: was the aggression of which Fair Lanes was aware (or should have been aware) sufficient to make it reasonably foreseeable to Fair Lanes that the Burke group would take violent action against the Bishop group. As such, it was improper to grant summary judgment because the Bishop group raised a genuine issue of material fact.

Although the parties have spent considerable effort discussing whether or not Georgia law recognizes a cause of action based upon a violation of O.C.G.A. § 3–3–22, we find it unnecessary to resolve that narrow question. The claim being made here is that Fair Lanes was guilty of negligence in failing to keep its premises safe for business invitees. Part of the factual scenerio is that the members of the Burke group were drunk and that knowing that Fair Lanes continued to serve them beer. Whether coupled with the other surrounding circumstances this amounted to negligence will be for the jury. We are totally satisfied that it is no defense for Fair Lanes to argue that by serving the beer it is somehow immune from liability.

The record contains evidence sufficient to raise questions which must be submitted to a jury under appropriate instructions. We make no effort to predict the outcome but hold it was improper to resolve the matter by way of summary judgment.

The judgment is REVERSED and the matter REMANDED to the district court for trial.