Russell JOHNSON, Appellant,

v.

MID–SOUTH SPORTS, INC., Appellee.

No. 68391.

Supreme Court of Oklahoma.

Feb. 26, 1991.

Gene M. Kelly, Tulsa, for appellant.

Michael J. Masterson, M. Christina Romero, Wilburn, Masterson & Holden, Tulsa, for appellee.

SIMMS, Justice:

Russell Johnson, plaintiff below, appeals from summary judgment entered in favor of defendant, Mid–South Sports, Inc. (Mid–South), in a negligence action based upon injuries Johnson received while attending

wrestling matches sponsored by Mid–South.

The Court of Appeals reversed the cause and remanded it for trial, holding that Johnson's injuries were the result of the combined effects of being hit by the unknown spectator and sliding down the slippery ramp. We grant certiorari, vacate the opinion of the Court of Appeals and affirm the trial court.

We need only determine whether the evidentiary materials submitted to the trial court indicated a substantial controversy exists as to a material fact. *Ross v. City of Shawnee*, Okl., 683 P.2d 535, 536 (1984). In making this determination, we are to examine the pleadings and evidentiary material submitted to the trial court and view all inferences and conclusions that can be drawn therefrom in the light most favorable to the party opposing the motion, namely Johnson.

All of the evidence contained in the record comes from Johnson's deposition, and the parties do not dispute the facts.

Because we find no substantial controversy as to any material fact, we hold that Mid–South was entitled to judgment as a matter of law.

Johnson, a 295–pound man, purchased a ticket to a wrestling event sponsored and promoted by Mid–South in which several wrestling matches were held. He has attended such events in the past, and because of his weight and his handicapped right arm which is cut off between the elbow and wrist, he always sits in the handicapped section so that he will not have to stand up to see the action in the ring as he says is often necessary at such events and which he has difficulty doing.

On this occasion, the handicapped section was full, so the ushers at the event had Johnson sit at the end of a row next to the handicapped access ramp. Throughout the preliminary matches, a group of "rowdy" spectators sitting on the same row as Johnson made several trips to the concession stands for beer. On their return trip, they spilled beer not only on the handicapped ramp, but on Johnson's boots as well. An-

other patron sitting near Johnson voiced his annoyance with the "rowdy" group, and the group left the area before the final wrestling match began. After the main event concluded, Johnson remained in his seat, as was his custom, and waited for the other fans to leave so that it would be easier for him to get up from his seat and negotiate the stairs. While sitting in the seat, he noticed someone coming at him from the other end of the row so he moved his legs to let them through. However, the person came at Johnson "like a freight train," hit him in the leg, and knocked him six feet into the air. Johnson testified on deposition that although he did not see who hit him, he thought that the person was one of the rowdy fans who was probably mad at him because they had to leave the area.

Johnson further testified that after being knocked into the air, he landed on the beer-soaked handicapped access ramp which had become slippery as a result of the beer. He then slid down the ramp and struck his handicapped arm against the floor fracturing the stub in several places. He brought this action claiming Mid–South was negligent in maintenance of the handicapped access ramp and in control of the crowd, particularly the rowdy group.

In their summary judgment pleadings the parties agreed that Johnson was a business invitee, and Mid–South argued below, as it does on appeal, that Johnson's testimony failed to show that Mid–South breached its duty of ordinary care to keep the premises in reasonably safe condition for use by invitees. *C.R. Anthony Co. v. Million*, Okl., 435 P.2d 116 (1967).

Johnson testified that when one of the rowdy fans repeatedly spilled beer, another patron told the rowdy fan to sit down and stop spilling beer. An usher apparently saw what was going on, and summoned a police officer to come to the area. Johnson never testified that he said anything to the rowdy fan, the bothered patron, the usher, or the officer, nor did he claim that he was threatened by anyone at the match. In fact, Johnson testified that the man who he thought hit him was not causing any trou-

ble himself even though he was with the group of rowdy fans. There is no evidence that any complaint was made by anyone to Mid–South or its employees concerning the rowdy fans sitting near Johnson. Eventually, this group left the area prior to the start of the final match, even though no testimony indicated that the usher or the officer asked or directed the group to leave.

■ From our review of the evidence, it appears that the usher, an employee or agent of Mid–South, recognized that an argument between fans might erupt, and thus exercised ordinary care in calling over an officer to assist if any of the fans got out of hand. The group left without incident, and it appears that everyone just went back to watching the wrestling matches. The evidence is void of any indication that the rowdy fans intended to return in order to hurt Johnson, or that Mid–South knew or should have known that Johnson would be singled out to be attacked as he claims he was. The undisputed facts give no indication that Mid–South should have foreseen the post-match assault. Thus, Mid–South did all that, in our view, was necessary to protect Johnson since they were unaware of any potential attacks directed at him. Mid–South exercised ordinary and reasonable care in providing not only ushers, but also police officers to control the crowd.

■ Moreover, we find that the proximate cause of the injury was the unknown person hitting Johnson in the leg with enough force to knock him into the air and onto the ramp.

■ It is well settled that proximate cause is an essential element of an action in negligence. *Loper v. Austin*, Okl., 596 P.2d 544, 546 (1979); *Rush v. Mullins*, Okl., 370 P.2d 557, 559 (1962). Furthermore, where the facts are undisputed as they are here, proximate cause is a question for the court. *Pepsi–Cola Bottling Company of Tulsa v. Von Brady*, Okl., 386 P.2d 993, 996 (1964).

The proximate cause of an event is that "which in a natural and continuous sequence, unbroken by an independent cause, produces the event and without which the event would not have occurred." *Gaines v. Providence Apartments*, Okl., 750 P.2d 125, 126–27 (1988). Were it not for the actions of the unknown spectator, the injuries would not have occurred. Thus, the unknown spectator's actions were the proximate cause of the injuries.

■ In coming to this conclusion, we note that negligence, if any, by Mid–South in allowing the ramp to become slippery merely furnished a condition which reacted with the independent act of the spectator to cause Johnson's injury. As such, it was a remote cause and not a proximate cause of the injuries. *See generally, Gaines*, supra; *Thompson v. Presbyterian Hospital, Inc.*, Okl., 652 P.2d 260, 264 (1982); *Hunt v. Firestone Tire & Rubber Co.*, Okl., 448 P.2d 1018, 1023 (1968); *Pepsi–Cola Bottling Company of Tulsa v. Von Brady*, Okl., 386 P.2d 993, 996–97 (1964); and *City of Altus v. Wise*, 193 Okl. 288, 143 P.2d 128, 131 (1943).

Johnson's injury resulted from the unforeseeable act of the unknown patron, and under the facts stated, Mid–South did not violate any duty owed to Johnson, nor was there any showing that Johnson's injury was proximately caused by any negligent act of Mid–South.

Finding no substantial controversy as to any material fact, we hold that Mid–South is entitled to judgment as a matter of law.

The judgment of the trial court is AFFIRMED.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, HARGRAVE and SUMMERS, JJ., concur.

DOOLIN, ALMA WILSON and KAUGER, JJ., dissent.

KAUGER, Justice, with whom DOOLIN, Justice, joins, dissenting:

I dissent from the majority's assessment that there is no substantial controversy concerning the material facts in the instant cause. It remains the duty of the jury, not this tribunal, to determine whether the fol-

lowing material questions of fact could result in a finding that the promoter acted without due care [1] and negligently by:

1) failing to provide handicapped seating to a patron who requested the special seating and who was obviously physically impaired—carrying excessive weight, walking with a cane and having an amputated arm;

2) seating a physically handicapped patron in a make-shift seat temporarily placed at the end of an existing aisle;

3) selling beer to fans who allegedly were intoxicated and who were seated in close proximity to the handicapped patron;

4) failing to take affirmative action when the security guard and the usher became aware of the crowd's unruly behavior;

5) failing to clear the exit ramp of spilled beer within a reasonable time despite the usher's knowledge that the ramp was wet;

and 6) failing to provide the handicapped patron, who had been seated in the aisle by the management, assistance in leaving the non-handicapped seating zone.

Neither can I agree that, as a matter of law, the wrestling event promoter did not violate any duty owed to the injured patron or that the patron's injury was not proximately caused by the promoter. The majority does not address the possibility of the foreseeability of an intervening cause or of the combined negligence of the unknown spectator and the promoter. Although I consider these omissions unfortunate, I dissent because of questions which must be resolved by the trier of fact—the existence of material questions of fact, the

resolution of the issues of negligence and the degrees thereof.[2]

FACTS

On April 22, 1984, the appellant, Russell Johnson (Johnson/patron), went to a wrestling match at the Fairgrounds Pavilion in Tulsa, Oklahoma. Because of his physical impairments—the need to walk with a cane and the amputation of his right arm—Johnson requested seating in the handicapped seating area. Johnson testified that along with his other disabilities, his weight made it difficult to get up and down stairs and out of his chair.[3] Although the usher originally escorted Johnson to the handicapped seating, when she discovered it was full, she seated him in a temporary chair which had been added to an existing row. Johnson was seated in the aisle next to the handicapped exit ramp.

A group of fans seated in the same aisle as Johnson were unruly during the wrestling match. They had allegedly consumed a large quantity of beer. On a return trip from purchasing the beer, a member of the group spilled beer on the handicapped exit ramp and on Johnson's boots. The group was conspicuous enough that one of the ushers asked a security guard to stand by the row. The security guard took up the requested position, but he did not ask the group to leave. Another irritated fan did ask the group to leave, and several of the fans complied with his request. Johnson testified that both the usher and the police officer saw the slippery ramp, but that no attempt was made to clean up the beer or to dry the ramp.

1. "Due care" may be either ordinary care or a high degree of care, according to the circumstances of the particular case. *Stills v. Mayor,* 438 P.2d 477, 482 (Okla.1968). Here, we have a promotor who accepted money in return for what the wrestling fan/business invitee presumably thought would be safe seating. The circumstances call for a definition of due care equating to a high degree of care. *Criterion Theatre Corp. v. Starns,* note 5 at 154 P.2d 94–95, infra; *Standard Theaters Corp. v. Hughes,* note 6, infra. Title 25 O.S.1981 § 4 provides: "Slight care or diligence is such as persons of ordinary prudence usually exercise about their own affairs of slight importance; ordi-

nary care or diligence is such as they usually exercise about their own affairs of ordinary importance; and great care or diligence is such as they usually exercise about their own affairs of great importance."

2. Issues of negligence and the degrees thereof are questions for the trier of fact. *Fox v. Oklahoma Memorial Hosp.,* 774 P.2d 459, 462 (Okla. 1989); *Flanders v. Crane Co.,* 693 P.2d 602, 605 (Okla.1984); *Prickett v. Sulzberger & Sons Co.,* 57 Okla. 567, 157 P. 356, 365 (1916).

3. Johnson weighs in excess of 295 pounds.

Apparently because of his ambulatory difficulties, Johnson remained seated in his chair when the wrestling match was over waiting for the crowd to clear. While he was seated, he saw a fan approach him from the side. Johnson tried to move out of the way but was unable to move fast enough to avoid an impact. He was struck by the fan, knocked out of his chair and up into the air. Johnson landed on the ramp and slid down it at a rapid rate of speed. At the end of the ramp, he hit a wall crushing his partially amputated arm and fracturing it in several places.

Johnson brought suit against the appellee, Mid–South Sports, Inc. (Mid–South Sports/promoter), to recover for his damages. Mid–South Sports filed a motion for summary judgment. Finding that the promoter was not negligent, the trial court sustained the motion. Johnson appealed. The Court of Appeals reversed the cause and remanded it for trial.

## THE EXISTENCE OF MATERIAL FACTS MILITATES AGAINST THE ENTRY OF SUMMARY JUDGMENT IN THE INSTANT CAUSE.

### A.

The seating of a handicapped person in non-handicapped, temporary seating, may be negligent.

This is a jury question.

The question of whether the promoter of a wrestling match is charged with the duty to provide reasonably safe seats for wrestling fans and to control fan violence is a question of first impression in Oklahoma. The general rule is that one who stages a boxing or wrestling match and invites the public to attend for a price is under the same obligation to keep the premises in a reasonably safe condition for his invitees,

or to warn them of hidden dangers, as the one who maintains any other commercial premises open to the public.[4] In Oklahoma, those engaged in the operation of public places of amusement are held to a stricter accountability for injuries to patrons than are the owners of private premises.[5] Proprietors who charge admission owe their patrons a high degree of care.[6]

In *Lawson v. Clawson,* 177 Md. 333, 9 A.2d 755, 758 (1939), the court held that when a patron purchases a ticket to a wrestling match, the minimum degree of care on the part of the promoter should be to provide the patron with a reasonably safe place to sit in order to witness the contest. Temporary bleachers collapsed in *Lawson* causing the patron a serious back injury. Under almost identical facts, the Tennessee Court of Appeals found in *Parker v. Warren,* 503 S.W.2d 938, 943 (Tenn.Ct.App. 1973) that a similar injury would not have occurred if the wrestling promoter had exercised ordinary care on behalf of the spectator. The promoter was held liable in damages for the patron's injuries. In *Hayward v. Downing,* 112 Utah 508, 189 P.2d 442, 445–46 (1948), the Utah Supreme Court found that where the wrestling promoter allowed patrons to sit on a platform not intended for seating purposes that it assumed the responsibility to maintain the platform in a reasonably safe condition. The Utah Court found that the promoter could be held liable for injuries to the patrons when the platform collapsed.

In *Lawson, Parker,* and *Hayward,* the respective courts found a duty by each of the respective promoters to provide reasonably safe seating. This duty existed even though the proprietors were only required to exercise ordinary care to ensure that the premises were safe for their patrons.[7] Under Oklahoma law, the proprieter here, who

---

4. *Parker v. Warren,* 503 S.W.2d 938, 943 (Tenn. Ct.App.1973); Annot., "Liability for Injury to One Attending Wrestling or Boxing Match or Exhibition," 14 A.L.R.3d 993, 1003 (1967).

5. *Tulsa Exposition & Fair Corp. v. Joyner,* 208 Okla. 540, 257 P.2d 1077, 1079 (1953); *Criterion Theatre Corp. v. Starns,* 194 Okla. 624, 154 P.2d 92, 94 (1944).

6. *Criterion Theatre Corp. v. Starns,* Id. 154 P.2d at 94–95; *Standard Theaters Corp. v. Hughes,* 185 Okla. 377, 91 P.2d 1058, 1062 (1939).

7. *Hayward v. Downing,* 112 Utah 508, 189 P.2d 442, 445 (1948); *Parker v. Warren,* see note 4, supra; *Lawson v. Clawson,* 177 Md. 333, 9 A.2d 755, 759 (1939).

charged admission to the wrestling event, was required to exercise a high degree of care to ensure the safety of Johnson. Johnson purchased his ticket and requested handicapped seating. The usher escorted the patron to the handicapped section and after finding that it was full, she seated the handicapped patron in a chair which had been added to an existing row—*for all practical purposes he was sitting in the aisle next to the handicapped ramp.*[8] These facts and conditions are sufficient to present a question for the jury to determine whether the promoter was negligent in seating the handicapped patron in the aisle.[9]

### B.

### Selling beer to allegedly intoxicated fans may constitute negligence.

#### This is a jury question.

The patron testified that the group sitting next to him was drinking heavily. He saw a member of the group, who he thought was obviously intoxicated, purchase numerous beers.[10] The same group member spilled the beer on the ramp while trying to return to his seat. He was seated on the same row as Johnson.

In *Bishop v. Fair Lanes Ga. Bowling, Inc.,* 803 F.2d 1548, 1552 (11th Cir.1986), the Court of Appeals found that it is not a "rare event" for loud and aggressive talking drunks to get into fights. The intoxicated actors in *Bishop* had been bowling and started an altercation in the parking lot of the bowling alley after the lanes had closed. The Court of Appeals found that the proprietor who had been made aware of the unruly behavior of the drunks was neg-

ligent in taking no action to make the premises safe for its invitees. It found that the factual situation presented a "classic factual question" for determination by the trier of fact. Here, the facts leading up to Johnson's injuries are not unlike those in *Bishop*. Both in *Bishop* and here the management was aware that the drunks were unruly. In *Bishop*, the behavior was reported by other patrons. Here, one of Mid–South's own employees requested a security guard to stand close to the unruly fans. In addition, another irritated fan asked a number of them to leave. Here, no less than in *Bishop*, a "classic factual question" is presented for the trier of fact—was the promoter negligent in failing to take some affirmative action to protect Johnson from the acts of intoxicated fans.

If the trier of fact found that Mid–South Sports neglected a duty to Johnson, our case law would support an award for damages. In *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300, 305 (Okla.1986), we stated:

"We, thus, hold that one who sells intoxicating beverages for on the premises consumption has a duty to exercise reasonable care not to sell liquor to a noticeably intoxicated person. It is not unreasonable to expect a commercial vendor who sells alcoholic beverages for on the premises consumption to a person he knows or should know from the circumstances is already intoxicated, to foresee the unreasonable risk of harm to others who may be injured by such person's impaired ability ..."[11]

The Eleventh Circuit was correct in its assessment in *Bishop* that altercations by

---

**8.** The testimony indicates that Johnson, unquestionably a handicapped person, was seated in the aisle while people without any impairment may have been occupying the handicapped section.

**9.** See, *Lawson v. Clawson,* see note 7 at 9 A.2d 760 supra.

**10.** The patron testified in his deposition on page 34 that:
"Well, I was sitting down there, and this guy was going out, and he was stumbling, and he was going to get two of the big twelve glasses of—cartons of beer, and come back and spilt

beer on the plywood that they have on the steps for the wheelchairs to go up to the—the ramp."

**11.** Violation of an ordinance is to be deemed negligence per se if the injury complained of: 1) was caused by the ordinance's violation, 2) was of a type intended to be prevented by the ordinance, and 3) the injured party was one of a class meant to be protected by the ordinance. *Boyles v. Oklahoma Natural Gas Co.,* 619 P.2d 613, 618 (Okla.1980). Title 37 O.S.Supp.1989 §§ 537 and 538 prohibit the selling or furnishing of alcoholic beverages to an intoxicated person. The penalty imposed for the prohibited

intoxicated patrons are not "rare events." The sale of beer in conjunction with sporting events has been profitable, but it has been discontinued or severely limited in a number of stadiums and auditoriums across the country. Police have reported that alcohol is involved in nearly every ballpark incident they handle. Where the sale of beer has been limited, arrests and ejections have steadily dropped. The training of all stadium employees to identify potential drunks and rowdies has reduced appreciably fan misconduct.[12]

The trier of fact must determine whether the promoter acted negligently in selling beer to the allegedly intoxicated fans. It is also for the trier of fact to determine whether it was reasonable to foresee that an intoxicated person might knock another patron down at a wrestling match causing him/her injury.[13]

## C.

The promoter may have been negligent in failing to control allegedly intoxicated fans which may have resulted in fan violence.

This is a jury question.

The operator of a place of business must use reasonable care to protect his/her invitees against injury through the negligent or wrongful acts of other invitees on the premises where he/she has reasonable cause to anticipate such acts and the probability of injury resulting therefrom.[14] Operators of a place of public amusement are under an affirmative duty to make it reasonably safe for patrons. The obligation of due care extends to supervision and control of others on the premises.[15] Ordinarily, a patron of a place of public amusement does not assume risk of injury from negligence of third persons which could have been prevented by the proprieter.[16]

In *Lee v. National League Baseball Club,* 4 Wis.2d 168, 89 N.W.2d 811, 816 (1958), the Wisconsin Supreme Court was faced with a factual situation in which a baseball fan had been crushed in the rush by other fans to retrieve a baseball. The Wisconsin Court found that it could not rule as a matter of law that the patron had assumed the risk of injury. Because there had been scrambles for foul balls in the past, the Wisconsin Court found that the defendant ought to have reasonably anticipated that a patron might be injured.

Knowledge by the proprieter of prior rowdiness by attendees was also found sufficient in *Stillwell v. City of Louisville,* 455 S.W.2d 56, 58 (Ky.Ct.App.1970), to hold the operator of a swimming pool liable for an assault. Here, both an usher and a police officer were aware of the allegedly intoxicated state of a group of fans seated in the same row as Johnson. Both parties observed their loud and unruly behavior. Other sporting events, including profes-

---

sale is a felony. Because there are conflicting material facts which must be resolved, we need not consider whether a violation of these statutes would be negligence per se. *Woodward v. Kinchen,* 446 P.2d 375, 377 (Okla.1968).

Title 37 O.S.Supp.1989 § 537 provides in pertinent part:
  "A. No person shall:
  ... Sell, deliver or knowingly furnish alcoholic beverages to an intoxicated person or to any person who has been adjudged insane or mentally deficient ..."

Title 37 O.S.Supp.1989 § 538 provides in pertinent part:
  "... Any person who shall knowingly sell, furnish or give alcoholic beverage to an insane, mentally deficient, or intoxicated person shall be guilty of a felony ..."

**12.** "Fighting Fan Violence; Some NFL Teams are Limiting Beer Sales, Training Employees to Identify Rowdies and Giving Designated Drivers Free Soft Drinks to Try to Control Crowds", The

Los Angeles Times, Part C, Page 1 (October 2, 1990).

**13.** See *Brigance v. Velvet Dove Restaurant, Inc.,* 725 P.2d 300, 305 (Okla.1986).

**14.** *Lee v. National League Baseball Club,* 4 Wis.2d 168, 89 N.W.2d 811, 814 (1958); *Hughes v. St. Louis Nat'l League Baseball Club,* 359 Mo. 993, 224 S.W.2d 989, 994, 16 A.L.R.2d 904, 910 (1949); *Phillips v. Wild Mountain Sports, Inc.,* 439 N.W.2d 58–9 (Minn.App.1989). See also, Annot., "Liability of Owner or Operator of Theatre or Other Amusement to Patron Assaulted by Another Patron," 75 A.L.R.3d 441 (1977).

**15.** *Diker v. City of St. Louis Park,* 268 Minn. 461, 130 N.W.2d 113, 116 (1964); *Phillips v. Wild Mountain Sports, Inc.,* see note 14 supra.

**16.** *Stillwell v. City of Louisville,* 455 S.W.2d 56, 58 (Ky.Ct.App.1970).

sional football and baseball teams have either discontinued the sale of beer or have limited the sale to the first half of the game to prevent crowd violence.[17] Considering the reports of fan violence associated with the sale of beer,[18] the promoter here could certainly have anticipated that a patron might be injured by the intoxicated fans. It is for a trier of fact to determine whether the promotor was negligent in not taking affirmative action to protect Johnson from injury and fan violence.[19]

### D.

Failure to clean up beer, spilt on a public walkway, may be negligent.

This is a jury question.

Here, the patron alleges that both the usher and the security officer saw the slippery ramp and that no one attempted to clean up the spilled beer. In *Begin v. Georgia Championship Wrestling, Inc.*, 172 Ga.App. 293, 322 S.E.2d 737, 740–41 (1984), a patron at a wrestling match fell when her foot caught between the seams of plastic strips which were used to protect the floor of the gymnasium. The *Begin* court found that a patron could reasonably expect that a promoter had taken steps to ensure that walkways were safe and clear. The court remanded the summary judgment to the trial court because:

"It cannot be said as a matter of law that the defendant exercised ordinary care in inspecting the premises and not observing the alleged defect, and if they should have observed it, in not rectifying the defect or warning the plaintiff of its existence. The evidence does not demand a finding as a matter of law that no actionable negligence appears." (Citations omitted)

In *Lingerfelt v. Winn–Dixie Tex., Inc.*, 645 P.2d 485, 489 (Okla.1982), this Court discussed what is required to hold a proprietor liable in slip and fall cases:

"In past 'slip and fall' cases involving self-service markets we have steadfastly refused to make the store an insurer of its customers, but have required proof of an act of negligence on its part, such as lack of due diligence in watching for and/or cleaning up spillages, which led to the condition which caused the accident. Our decision today does not alter that rule."

The promoter is not an insurer of the patron's safety. However, there is evidence that both the security guard and usher may have been aware that the handicapped ramp was wet. The evidence is uncontroverted that nothing was done to remedy the unsafe condition. Although the promoter here may not have been under a duty to take extraordinary care to keep the floor completely dry,[20] the trier of fact must decide the question of whether the promoter was negligent in failing to clean up the spill. If a determination is made that the promoter neglected his duty by not providing a dry walking surface, then the jury must decide whether the patron would have been injured by the intoxicated patron if the ramp had not been slippery.[21]

### E.

The trier of fact might determine that seating the handicapped patron in a makeshift seat constitued the event leading to a foreseeable injury.

This is a jury question.

Causation traditionally lies within the

---

**17.** See, "Fighting Fan Violence; Some NFL Teams are Limiting Beer Sales, Training Employees to Identify Rowdies and Giving Designated Drivers Free Soft Drinks to Try to Control Crowds", see note 12 supra.

**18.** *Id.*

**19.** *Lee v. National League Baseball Club*, see note 14, supra.

**20.** *Perry v. Macon County Greyhound Park, Inc.*, 514 So.2d 1280–81 (Ala.1987). In *Perry*, the

Alabama Supreme Court found that a racing promoter was under no duty to keep a floor completely dry or completely free of litter. However, the *Perry* court also found that liability might be shown in one of two ways: 1) by showing the defendant had actual knowledge of the defect and 2) by showing the defendant had implied knowledge of it. Here, both the usher and the security guard were aware of the wet handicapped ramp.

**21.** *Atherton v. Devine*, 602 P.2d 634, 637 (Okla. 1979).

realm of fact.[22] It is for the jury to decide whether the injurious consequences resulting from a negligent act could have reasonably been foreseen or anticipated.[23] Proximate cause of an injury is a question of fact and only becomes a question of law where the evidence together with all inferences which may be properly deduced therefrom is insufficient to show a causal connection between the alleged wrong and the injury.[24] In *Atherton v. Devine*, 602 P.2d 634–35 (Okla.1979), this Court found:

> "The general rule is that an intervening force which could reasonably have been foreseen or which is a normal occurence of the risk created will not suffice to relieve an original tortfeasor of liability. A person who has received an injury due to the negligence of another is entitled to recover all damages proximately traceable to the primary negligence including subsequent aggravation which the law regards as a sequence and natural result likely to flow from the original injury even though there may have been some intervening cause contributing to the result. Where there is an intervening responsible agency which directly produces an injury the question whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, is to be determined by ascertaining whether the agency which intervened was of such character and the circumstances under which it occurred were such that it might have been reasonably expected that an injury similar to the one caused might actually happen. If, under the circumstances, the intervention of such an agency in the manner in which it occurred might reasonably have been expected to happen, then the chain of causation extending from the original wrongful act to the injury is not broken by the independent intervening agency, and the original wrongful act is treated as the proximate cause thereof. Foreseeability is an essential element of proximate cause in Oklahoma, and it is the

standard by which proximate cause, as distinguished from the existence of a mere condition, is to be tested."

Here, a jury might find that although another patron ran into Johnson and knocked him down that the chain of events leading to his injury began when the promoter seated him in make-shift seating. Likewise, it is not unlikely that a jury might also determine that in any crowded event that there is going to be pushing and shoving. The jury might also determine that especially in the case of a handicapped patron the activity might lead to injury that the promoter could have foreseen. It is just as likely that the jury might find no negligence on the part of the wrestling promoter. That determination lies within the realm of the trier of fact.

In *Camp v. Rex*, 304 Mass. 484, 24 N.E.2d 4, 6 (1939), the patron attended a wrestling match. At the conclusion of the match there was an altercation between the contestants and one of the referees. Many of the five or six hundred other attendees surged towards the ring to see what was happening. The patron was crowded and could not get out of the seat by using the aisle. She stood up on her seat to try to exit, and the crowd knocked she and her chair backwards. She sued for her injuries. The Massachusetts court found that the patron had no control over the crowd's activities and that it was for the jury to determine whether she acted reasonably in trying to exit by standing on her chair. Here, it is for the trier of fact, not this Court to determine whether Johnson acted reasonably in trying to avoid the impact from the unknown fan, and whether the promoter could have foreseen that he might be injured as a result of having been seated in a chair at the end of an aisle.

We recognized concurrent negligence in *Brigance v. Velvet Dove Restaurant*, 756 P.2d 1232–34 (Okla.1988):

> "Tortfeasors are classified as 'concurrent tortfeasors' where their independent acts

---

**22.** *Pryor v. Lee C. Moore Corp.*, 262 F.2d 673, 675 (10th Cir.1959), *cert. denied*, 360 U.S. 902, 79 S.Ct. 1284, 3 L.Ed.2d 1254 (1959); *Atherton v. Devine*, see note 21 at 638 supra.

**23.** Id.

**24.** *Smith v. Davis*, 430 P.2d 799–800 (Okla.1967).

concur to produce a single or indivisible injury. In a case such as this the commercial vendor's act of selling or furnishing an intoxicating beverage for on the premises consumption to a noticeably intoxicated person concurs with the acts of the intoxicated drive to produce the single or indivisible injury resulting from the automobile collision.... Where liability is joint and several, the injured party may institute several suits against the multiple tortfeasors, but satisfaction of a judgment against one of the tortfeasors bars a judgment against the other tortfeasors." (Citations omitted)

Any one of the independent acts of the promoter—putting Johnson in a make-shift seat, selling beer to intoxicated individuals, failing to control fan violence, not providing a dry exit ramp—could combine with the unknown spectator's act of running into Johnson to produce his injury. The trier of fact must determine the issue of liability.

The majority makes much of the fact that the person who impacted with Johnson is an "unknown person." The problem of the "ghost tortfeasor" was disposed of in *Paul v. N.L. Indus., Inc.*, 624 P.2d 68–69 (Okla.1981). Under *Paul*, if the trier of fact determines that the wrestling promoter was negligent, it must also consider the negligence of the tortfeasor not a party to the lawsuit. The degree of negligence of each tortfeasor is then properly apportioned. Neither can it be argued that the promoter should not be held liable because the injury resulted from hitting the wall, not from the slickness of the walkway. If the original negligent conduct—seating Johnson at the end of an aisle in a make-shift seat or allowing the beer to remain on the walkway causing Johnson to hit the wall at a higher rate of speed than he would have had the ramp been dry—concurred with the action of the "unknown person," and both the fall and the conditions under which it occurred operated proximately to cause Johnson's injury, the promoter may be liable. This may be so although the promoter was not responsible for the "unknown person's" act.[25]

## CONCLUSION

Even when the basic facts are undisputed, a motion for summary judgment should be denied, if under the evidence, reasonable persons might reach different inferences or conclusions from the undisputed facts. Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue of any material fact, and that the moving party is entitled to judgment as a matter of law.[26] Under the 1984 pleading code, all that is required is a short and plain statement showing that the pleader is entitled to relief.[27] The petition will be considered to state a cause of action unless the plaintiff can prove no set of facts in support of the claim which would entitle him to relief.[28]

I express no view as to whether the patron here is entitled to recovery or whether any one of the promoter's acts created the risk or combined with the unknown spectator's act to cause the patron's injuries. However, summary judgment was not appropriate in the face of the existing material questions of fact. All we have before us are the parties' pleadings and Johnson's deposition. Every civil case subject to summary proceedings must be grounded and considered upon its own peculiar pleadings, affidavits, exhibits, admissions, depositions, and the like, and if reasonable persons in the exercise of fair and impartial judgment might reach different conclusions upon consideration of the same,

**25.** See, *Plesko v. City of Milwaukee*, 19 Wis.2d 210, 120 N.W.2d 130, 133, 16 A.L.R.3d 1315, 1322 (1963); *Foellmi v. Smith*, 15 Wis.2d 274, 112 N.W.2d 712, 716 (1961); *Walrod v. Webster County*, 110 Iowa 349, 81 N.W. 598–99 (1900).

**26.** *Buckner v. General Motors Corp.*, 760 P.2d 803, 812 (Okla.1988).

**27.** *Gay v. Akin*, 766 P.2d 985, 993 (Okla.1988).

**28.** *Buckner v. General Motors Corp.*, see note 26, supra.

summary judgment must be denied.[29]  Material questions of fact are raised by the record on review.  The trial court erred in entering summary judgment.

---

**29.**  *Spirgis v. Circle K Stores, Inc.,* 743 P.2d 682, 685 (Okla.Ct.App.1987).  (Approved for publication by the Supreme Court, 1987).