MAKAR, J.,
concurring dubitante.
On Memorial Day in 2011, R.A.W., a fifteen-year old female, was with her sister and two males in the Blackwater State Forest, sitting close to one another on the ledge of a sandbar. Her sister and one of the males had beers in their possession; the other male did not. An enforcement officer who approached the group testified that he saw a beer can that appeared to be on the ground between R.A.W.’s legs and that when she stood up it tipped over and its dark-colored contents foamed on the sand like beer. Beyond these visual observations, the officer took no steps to confirm the liquid was actually beqr.
R.A.W. was charged with possession of alcohol by a minor. She argues, in part, that her motion for judgment of acquittal should have been granted because of the lack of adequate proof that the liquid was actually an illegal substance, a question that is addressed under a de novo standard. P.N. v. State, 976 So.2d 90, 91 (Fla. 3d DCA 2008) (judgment of acquittal is proper if the State fails to present sufficient evidence to establish a prima facie case of the crime charged).
The State, of course, bore the burden of presenting sufficient evidence to prove beyond a reasonable doubt that the brown foaming liquid was an illegal substance. But did it? This Court has previously said that, although the burden of proof is “relatively low” in alcohol possession cases, the State must present adequate evidence of the contents of a container believed to contain alcohol. See S.C.S. v. State, 831 So.2d 264, 264 (Fla. 1st DCA 2002) (reversing conviction where State presented no evidence of contents of bottle possessed by minor). Likewise, the Third District has reversed a conviction where the State failed to present evidence that a bottle’s contents were illegal alcohol. P.N., 976 So.2d at 92 (officer saw juvenile holding beer bottle, which when eventually recovered was “full of sand and water”).
Here, the only evidence that the content of the can was an illegal substance was the officer’s observation that the liquid that spilled out was brown and that, in his personal opinion, it foamed like beer when it spilled on the sand. He did not smell the can or its contents; he did not determine whether the liquid was cold or warm, which might affect foaming. He did not see her hold or drink from the can; she did not act in an unusual way when the can tipped over. In fact, he did not take possession of the can, leaving it with the group sitting on the sandbar for them to discard. R.A.W. was not subject to any observation or testing for alcohol consumption, and showed no signs of having imbibed; indeed, she denied having alcohol. *313 In short, no steps were taken — other than observing a dark spilled liquid foaming — to determine that the can actually contained beer or other alcoholic beverage.
Because the bottle’s content was not directly verified by smell, we are left to infer that the officer’s “beer foam” testimony is legally sufficient to meet the State’s burden of proving the illegal nature of the liquid. This Court in S.C.S. and the Third District in A.A v. State, 461 So.2d 165, 167 (Fla. 3d DCA 1984), noted that an experienced officer’s testimony about the “appearance and smell of illegal contraband” is enough to prove its illegal nature. S.C.S., 831 So.2d at 264 (citing A A., 461 So.2d at 166) (emphasis added). But no Florida court has held that mere observation of a liquid or its foam without also smelling it is sufficient to establish it is alcoholic, even by an experienced officer.
The officer here was not held out as an expert, nor did he have any specialized experience or training on beer and its foaming qualities vis-á-vis other brown-colored carbonated beverages. Academic literature exists on the creation of the perfect “head” that is produced when beer is poured into a glass and foams;[1] none appears to exist on the visual differences between spilt beer foam and spilt soda foam, particularly on sandy warm surfaces. As such, the “beer foam” opinion of the officer leaves open some doubt about the nature of the liquid. Kids do goofy things like putting soda in a beer bottle to act cool; the trial judge recognized this possibility.
This situation is unlike those where an officer either has specialized expertise or actually observes and smells an illegal substance. For example, in A.A., the “officer’s opinion that the substance seized in the present case was marijuana was based upon his sensory perceptions of sight and smell, as well as the facts that the substance was in a clear plastic baggie and the juvenile possessed ‘rolling papers.’ ” 461 So.2d at 166. The officer — who was qualified to testify as an expert in marijuana identification — had nine years of experience, four of which were in a special narcotics unit where he took eoursework on the topic of identifying marijuana; he had seen and smelled “tons” of marijuana; his “identifications of substances as marijuana had always been corroborated by lab tests.” Id. The juvenile in AA unsuccessfully argued this expert testimony was insufficient to form an opinion and “that something more in the line of scientific or chemical proof is required.” Id. The Third District disagreed, finding this degree of evidence was sufficient to establish that the substance was indeed marijuana. Id. at 167.
Here, the officer could have confirmed that the foaming brown liquid was beer by simply smelling the contents of the bottle or the foam. Doing so removes doubt (as in A.A.). It will not always confirm the liquid is illegal, but it is nonetheless an important evidentiary protocol. For example, in P.N. the officer approached a juvenile he saw holding a beer bottle; he did not see the juvenile drinking from the beer bottle or directly determine that the contents of the bottle were alcoholic. P.N., 976 So.2d at 91. He took steps to recover the bottle, however, but found it “was full of sand and salt water.” Under these circumstances, as the State conceded *314 at oral argument in that case, “it is not illegal for a minor to possess a beer bottle that contains no alcohol.” Id.
Likewise here, it is not illegal per se for a minor to possess a beer can containing a brown liquid that (according to the officer) foamed like beer when tipped over. Admittedly, the probability that a brown foaming liquid from a beer can is actually beer is higher than it being root beer, cream soda, or a diet cola. But what if the beer can in this case had been a plastic cup instead? It is doubtful that testimony the cup contained a brown liquid that foamed like beer when spilled would sustain the State’s burden of proof that the liquid was alcohol.
There is merit to the common sense notion, as expressed by the officer, however, that a liquid flowing from a spilled beer can is probably beer, particularly when it looks and appears to foam like beer. What an appellate judge’s view might be on this point is less important than what a jury (or judge as fact-finder) might reasonably believe. See A.A., 461 So.2d at 167 (factual questions beyond province of appellate court where record supports trial court’s findings); see also Bishop v. Fair Lanes Ga. Bowling, Inc., 803 F.2d 1548, 1551 (11th Cir.1986) (“Whatever our own view may be, we believe a jury could reasonably find that it is not a ‘rare event’ in human experience for loud and aggressive talking drunks to get into fights at 2:00 A.M. on a Saturday morning.”).
When the State adjudicates a juvenile for possession of alcohol, the degree of forensic evidence does not have to approach “rocket science” to prove guilt. Only rudimentary means of establishing a liquid is an illegal substance need be pursued through observation and smell. The ultimate question in this case becomes whether “beer can + brown foaming spilt liquid = alcohol” is legally sufficient to support a delinquency adjudication for possession of alcohol. Proof of whether it was beer that spilled on Memorial Day 2011 should not be based on the perceived characteristics of its foam alone; here, the additional factor is that the container was a beer can. Given the “relatively low” burden of proof in alcohol possession cases in this District (S.C.S.), I am led to concur but not without doubt given the lack of readily available olfactory verification.
WOLF and RAY, JJ., concur. MAKAR, J., concurs dubitante.

. See, e.g., J. Bruce German & Michael J. McCarthy, Stability of Aqueous Foams: Analysis Using Magnetic Resonance Imaging, J. Agric. & Food Chemistry (1989) (noting that aqueous foams "differ widely in their structure and kinetic stability”); see generally Beer head, Wikipedia, http://en.wikipedia.org/wiki/ Beer — head (last visited July 18, 2012) (discussing importance, formation, and development of improved beer foams).